Mix, Appellant, v. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Respondents.

*December 2, 1958—January 2, 1959.*

For the appellant there were briefs by *Steele, Smyth, Klos, Thompson & Flynn* of La Crosse, and oral argument by *Jerome J. Klos.*

For the respondents there was a brief by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Daniel T. Flaherty.*

MARTIN, C. J.   The accident happened on July 26, 1956, at about 5:45 p. m., three miles southeast of La Crosse on State Highway 33. The highway, a 20-foot-wide concrete pavement, running in an east-west direction, was dry and driving conditions were ideal.

At 5:30 p. m. defendant Hass had unloaded rock from his dump truck along a terrace wall on the property of William R. Trapp just north of the highway. There was no driveway at this point. Hass had backed the truck across the shoulder and a slight depression, and while the dumping operation was carried on, the front of the truck was from three to five feet from the edge of the cement pavement. Just prior to the accident Hass drove the truck, at about five miles per hour, across the road and turned east into the south lane of the highway. West of that point Highway 33 is a straight, gradual incline for a distance which one of the exhibits shows

was somewhat over 500 feet to the crest of a rise. To the east the highway is straight and level for about a half mile.

Wilbert Mix, the plaintiff, was operating a motorcycle in an easterly direction on Highway 33 at about 55 to 60 miles per hour. When he first saw the truck at a distance of about 300 feet, he testified, it was at the side of the road and it began to move into the highway. Mix gradually slowed his vehicle but he did not try to stop and did not sound his horn. The Hass truck continued to proceed and when Mix was about 50 feet from it he decided a collision was unavoidable and stepped off the cycle, sustaining the injuries for which he sued. The motorcycle continued on and struck the left rear of the dump truck.

The jury found Hass causally negligent as to lookout. It found Mix causally negligent with respect to speed and management and control, not negligent as to lookout; and it apportioned the negligence 60 per cent to Hass and 40 per cent to Mix. In its decision on motions after verdict the trial court found that the causal negligence of the plaintiff was at least equal to that of Hass, changed the jury's answers in that respect, and ordered the complaint dismissed.

There is no doubt of Hass' negligence as to lookout. He testified he looked both to the east and west before moving his truck into the highway, and again to the east as he crossed the road, the highway to the west being behind him. He neither saw nor heard the motorcycle approaching but felt the thud of its impact when the truck was completely in the eastbound lane.

Mix testified he saw the truck when he was about 300 feet away from it and it started slowly moving into the highway. He slowed his motorcycle gradually by decelerating and applying both his hand and foot brakes. He testified that, "He [Hass] was just coming into the road. I figured I could get around him. I thought he probably would see me and was deliberating, hesitating so I could get around him," but that

Hass continued without hesitation. As Hass continued into the highway, Mix realized he was going to come into his lane of travel and decided he could do nothing but try to get around the truck to the left. He did not attempt to blow his horn, although it was about two inches from the throttle control. When about 100 feet from the truck he applied the brakes full force and at 50 to 60 feet from it he decided the only thing he could do was step off the motorcycle because he could not get around the truck. He testified that he could have stopped if he had applied his brakes hard when he was 200 feet behind the truck. Mix testified he was traveling 25 to 30 miles per hour when he stepped off the motorcycle.

While there are in the trial court's decision some discrepancies with regard to distances shown by the record, they are not particularly material. Its view of the evidence, however, was erroneous. One case was cited, *Heine v. Oswald Jaeger Baking Co.* (1957), 275 Wis. 26, 29, 80 N. W. (2d) 791, where the facts are not similar to those in the present case. There the plaintiff motorcycle driver, following closely behind a streetcar on a busy city street, and being unable to see a truck double-parked at the curb, turned to the right to pass the streetcar when he was 20 feet from the truck, and collided with the rear of the truck. In holding that the negligence of the plaintiff was at least as great as that of the defendant truck driver, this court used the language quoted by the trial court here:

"To rush into such a situation on a motorcycle at 15 miles per hour without any lookout whatever for an obstruction within the distance in which the motorcycle could be stopped, evidenced an utter disregard for safety."

This court has often said that while there are cases where the circumstances are such that a court can properly rule as a matter of law that the negligence of one of the parties is equal to that of the other, such cases are extremely rare and

the apportionment of negligence is almost always for the jury. *Schmidt v. Leary* (1934), 213 Wis. 587, 252 N. W. 151; *Hansberry v. Dunn* (1939), 230 Wis. 626, 284 N. W. 556.

We do not deem the circumstances in this case warrant the conclusion of the trial court. Mix did not rush blindly into a dangerous situation; he saw the Hass truck in plenty of time to stop, and the jury absolved him of any negligence as to lookout. He testified his speed, although found negligent by the jury, was not in excess of the legal limits for rural travel and was not such as would have prevented him from stopping within the distance available after he observed the truck. His speed was not negligent until the truck drove into the highway. Moreover, plaintiff had the right of way over parked vehicles. While the jury apparently considered his management and control so faulty as to constitute negligence, one of the factors which it had to consider in weighing his negligence against that of Hass was whether or not it was reasonable, under all the circumstances, for him to assume that Hass would yield the right of way.

To avoid the accident Hass had only to look and see what was there to see, and in driving his heavy vehicle out onto the highway without doing so, even though his action was due to only one kind of negligence, was an extremely dangerous act. His failure to look prevented him from yielding the right of way; it prevented him from operating the truck so as to avoid a collision. It is not for the court to determine that such negligence had no more to do with producing the accident and plaintiff's injuries than Mix's own negligence. As stated in *Taylor v. Western Casualty & Surety Co.* (1955), 270 Wis. 408, 411, 71 N. W. (2d) 363:

"The degree of negligence attributable to a party is not to be measured by the character thereof nor by the number of

respects in which he is found to have been at fault. It is the conduct of the parties considered as a whole which should control. In other words, once it has been established that each has been negligent, it is then the jury's function to weigh their respective contributions to the result, which will, regardless of the nature of their acts or omissions, determine which made the larger contribution and to what extent it exceeds or is less than that of the other."

This court has also held that where, as here, the negligence of the parties differs in kind and quality, the comparison is for the jury. *Johnson v. Sipe* (1953), 263 Wis. 191, 56 N. W. (2d) 852.

The jury's apportionment was 60 per cent and 40 per cent, from which it would appear that it gave serious consideration to all the circumstances presented by the evidence. If it had made a 90 per cent and 10 per cent apportionment, we might be confronted with a different problem; but it is not for the trial court or this court to substitute its judgment for that of the jury in view of the circumstances involved here.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the jury verdict and enter judgment thereon.