Gerard J. KRANTZ, Plaintiff-Appellant,

v.

The GEHL COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 87–1905. Submitted on briefs June 24, 1988.—Decided September 1, 1988.*

(Also reported in 431 N.W.2d 675.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Vernon Molbreak* and *Randall J. Andersen* and *Molbreak & Andersen, S.C.,* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Bradley D. Armstrong* and *Michael S. Anderson* and *Axley Brynelson,* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

DYKMAN, J. Gerard Krantz appeals from a judgment dismissing his complaint. Krantz was injured while cleaning Gehl-manufactured farm machinery and sued Gehl for damages. The trial court granted Gehl's motion for a directed verdict. The issue is whether Krantz's negligence exceeded that of Gehl as a matter of law. We conclude that it did, and affirm.

## FACTS

In 1984, Krantz was injured while unloading haylage[1] from a Gehl forage box.[2] The forage box, while self-unloading, has no power of its own. The self-unloading features are powered by connecting the forage box to a power take-off on a tractor. Conveyors (feeder aprons) move the haylage to the front end of

---

[1]Haylage is chopped hay which is stored in a silo.

[2]A forage box is approximately sixteen feet long, nine feet wide and nine and one-half feet high. In the field, a chopper connected to a tractor chops hay and blows it into the forage box.

the forage box where it passes through a set of three "beaters," positioned one above the other. The beaters are large steel cylinders from which steel blades protrude.

The beaters are controlled by beater clutch levers which are located at the front side corners of the forage box. Pulling the beater clutch lever out and down activates the beaters while pushing the lever up and in disengages the beater drive. The beaters shred the haylage and deposit it onto a cross-conveyor. The cross-conveyor carries the haylage through the cross-conveyor discharge opening to a blower unit located next to the forage box, which blows the haylage into the silo for storage.

Nothing in the forage box operates unless its "telescoping drive connection" is connected to a tractor's power take-off shaft. Engaging the power take-off automatically engages the cross-conveyor. The feeder aprons are only engaged when the beaters are "on." A separate control regulates the speed of the feeder aprons, which may be operated at one of three speeds: "low," "high," or "sweep." "Sweep" speed is used to clean out the forage box after it has been emptied. Just above the cross-conveyor discharge opening, at roughly eye level, is a decal that says:

*DANGER*

KEEP HANDS OUT.
ROTATING COMPONENTS CAN CATCH HANDS.
FAILURE TO HEED CAN RESULT IN DEATH OR
SERIOUS INJURY.

On July 18, 1984 at about 5 p.m., after Krantz had unloaded the last load of the day, he set the feeder apron control at "sweep" speed to clean the box so there would be no hay remaining to rot the box. He let the beaters and conveyors run at "sweep" speed for "at least five minutes." At the end of the process there was still some material left near the cross-conveyor by the discharge opening. The material was approximately seven inches deep and extended three to five feet back into the box from the cross-conveyor.

Intending to remove the remaining material manually, Krantz reached into the cross-conveyor discharge opening as far as he could with his right arm to sweep the material out. While he reached under the beater blades, his left arm accidentally turned on the beater control lever and the beater blades injured his right arm. Krantz used his left hand to shut the beaters off with the beater control lever. While struggling to free his right arm he kept his left hand on the beater control lever and accidentally turned it back on. Hearing the commotion from the barn, Krantz's brother came and shut the forage box off.

Krantz sued Gehl for damages, alleging that Gehl had negligently designed the forage box, and that such negligence directly caused Krantz's injuries. At the conclusion of Krantz's case, Gehl moved for a directed verdict, asserting that Krantz was negligent as a matter of law and that his negligence exceeded that of Gehl as a matter of law. Basing its decision on the reasoning in *Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 743–45, 218 N.W.2d 279, 287–88 (1974),[3] the

[3]In *Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 218 N.W.2d 279 (1974), the trial court had directed a verdict dismissing the

trial court granted Gehl's motion for a directed verdict, concluding that Krantz was negligent and that his negligence exceeded Gehl's. The court entered judgment against Krantz.

## STANDARD OF REVIEW

■ ■

In determining whether a directed verdict should be granted, the evidence is viewed most favorably to the party against whom the verdict is sought to be directed. The test is whether there is any credible evidence which under a reasonable view would support a verdict contrary to that which is sought. A trial judge should, except in the clearest of cases, withhold ruling on a directed verdict and ordinarily permit the question to go to the jury.

---

plaintiff's action after a jury had returned a verdict for the plaintiff. The plaintiff had fallen into a crop blower fan which injured his leg. The plaintiff had put himself in a "precarious position with his feet on the narrow rim of the crop blower, while the tractor which powered it was running." *Id.* at 745, 218 N.W.2d at 288. On review, the court found the following facts significant: that plaintiff was a farmer who had lived on a farm all his life; that he was familiar with farm machinery; and that he was experienced with the crop blower. *Id.* at 744, 218 N.W.2d at 287. The court noted that the defendant in *Schuh* may have been negligent because of the unusual and misleading position of the crop blower's clutch lever, *id.* at 737, 218 N.W.2d at 284, inadequate warnings, *id.* at 739–40, 218 N.W.2d at 285, and the foreseeability of the misuse. *Id.* at 743, 218 N.W.2d at 287. Nevertheless, the court concluded that the plaintiff's negligence equalled or exceeded any negligence of the defendant as a matter of law. *Id.* at 744, 218 N.W.2d at 287.

*Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 154, 311 N.W.2d 658, 666 (Ct. App. 1981) (citations omitted.) The test on appeal is whether the trial court was clearly wrong. *State v. Leach,* 124 Wis. 2d 648, 665, 370 N.W.2d 240, 249 (1985). This test requires us to give deference to a trial court's decision. "Where the causal negligence of the plaintiff is greater than that of the defendant the trial court has a duty to so hold as a matter of law." *Stewart v. Wulf,* 85 Wis. 2d 461, 471, 271 N.W.2d 79, 84 (1978).

Krantz testified to the following: that he had operated forage boxes on a continuous basis as needed for six or seven years before the accident and knew all about the safety devices, safety decals and warnings on the Gehl forage box; that before his accident, he knew he needed to follow a mandatory safety shutdown procedure every time before manually cleaning the forage box; that he knew that the parts of the procedure included shutting off the power take-off, shutting off the tractor engine, and then disconnecting the power take-off from its mating part; that had he followed this procedure, or any one part of it, his accident would not have happened; that he followed no part of this procedure; that he knew that the beaters in the forage box were potentially dangerous even if they were not moving because unless the power take-off was disengaged there was a "minute possibility that the beaters might start up when you don't want them to"; that he knew he was supposed to keep his hands out of the discharge opening.

Krantz concedes he could have prevented the accident if he had followed the mandatory shutdown procedure. However, he argues that his behavior and actions were "undoubtedly foreseeable by the manufacturer and arguably reasonable under the circum-

stances" because the machine wasn't unloading itself, he was enticed by the placement and location of the beater clutch lever near the discharge opening, he was under time pressure and the environmental conditions were less than ideal.

Even if we assume that Gehl was negligent as a matter of law because of the design and location of the beater clutch control lever,[4] we agree with the trial court that Krantz's negligence exceeded Gehl's as a matter of law. Krantz admitted that if he had followed the mandatory shutdown procedure his accident would not have happened.[5] Krantz admitted that if he had kept his hand out of the discharge opening, as he knew he should have, the accident would not have happened. Although Krantz alleges that he was under time pressure and that there were less than ideal

---

[4]Krantz claimed the beater clutch control lever design demonstrated Gehl's negligence as a matter of law because: (1) it was defective because of the clutch's direction of travel (down for "on"), the small amount of travel, the ease of engagement, and its lack of detent; (2) the clutch was in the defective condition when it left the manufacturer; (3) the clutch was unreasonably dangerous to the user; (4) the clutch was a substantial cause of plaintiff's injury; (5) the clutch reached Krantz without substantial change from when sold and Gehl was in the business of selling such product. Krantz claimed these factors fulfilled the test for strict liability laid out in *Dippel v. Sciano,* 37 Wis. 2d 443, 460, 155 N.W.2d 55, 63 (1967), and that therefore Gehl was negligent as a matter of law.

[5]Krantz asserts that he "reasonably complied with defendant's clean-out procedure" by sweeping out under the beater with his arm. However, Krantz's actions are contrary to a safety instruction in the operator's manual: "DO NOT attempt to hand-feed any crop or material into the area of the Unloading Mechanism!" Krantz claimed he was familiar with the operator's manual's safety instructions. Nevertheless, he disregarded them.

environmental conditions, he submitted no evidence on these factors.[6]

Krantz also claims that the warning decal over the discharge opening which warns "keep hands out, rotating components can catch hands," actually invited Krantz to put his hands near the beaters once they had stopped rotating. Krantz claims that, once the rotation had stopped, a reasonable operator would believe that the danger had also stopped. However, Krantz conceded that he knew there was still a danger even when the beaters weren't rotating because "they might start up even when you don't want them to." In addition, the trial court specifically noted that it was not deciding the directed verdict motion on the basis

---

[6]Krantz claims that "a reasonable jury could properly have found that the sweltering temperature, exhaustive workday, equipment design, machinery placement and general urgency made plaintiff's actions 'reasonable under the circumstances.'" Although Krantz submitted evidence regarding allegedly negligent equipment design and machinery placement, Krantz has not indicated where there is evidence in the record on these other factors. Gehl claims Krantz submitted no such evidence. In his reply brief, Krantz makes a record reference in which he described the day the accident occurred: "It was in July. It was like with regular July weather. It was hot and dry and some dust flying around, things like that, 'cause it was during a dry spell." From this testimony, Krantz claims that "reasonable jurors could easily find that such undesirable environmental conditions adversely affect the safe use of such a machine." We do not agree. For a jury to reach the conclusions Krantz proposes from the evidence submitted, it would have to speculate, which it may not do. *See Millonig v. Bakken,* 112 Wis. 2d 445, 458 n. 2, 334 N.W.2d 80, 87 (1983) (Wis J I—Civil 220, *Jury not to speculate,* held to be correct statement of the law.) We therefore need not consider whether the working conditions were relevant to the negligence issue.

of the warnings' sufficiency, but on the basis of Krantz's contributory negligence.

Furthermore, looking at the testimony in the light most beneficial to Krantz regarding the position of his left hand just before the accident, Krantz testified that it was on the safety bar, approximately eight inches above the beater bar clutch. Krantz then leaned over to sweep out the box with his right arm, even though he knew that if he accidentally hit the beater bar clutch, he could turn on the beater bars. This is further support for concluding that, as a matter of law, Krantz was more negligent than Gehl.

The dissent attempts to distinguish *Schuh, supra,* because comparative negligence law at the time of *Schuh* barred recovery if a plaintiff was fifty percent or more negligent, and now recovery is barred if plaintiffs are fifty-one percent or more negligent. A one percent difference cannot be the basis for rejecting *Schuh.* No appellate court can cut that finely. The dissent's suggestion that dissimilar kinds of negligence somehow cannot be compared is really an assertion that *Schuh* was wrongly decided. However, we are bound by supreme court opinions. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

In *Schuh,* the tractor company's negligence was improperly placing a clutch lever, while the plaintiff's negligence was proceeding in the face of a known danger. *Schuh,* 63 Wis. 2d at 737 and 744, 218 N.W.2d at 284 and 287. The dissent does not explain how that differs from the situation here.

Krantz violated every safety rule he claimed he knew. As the trial court aptly noted, "whether it was through overfamiliarity and the false sense of security that comes with it, whether it was just because it was the end of a long, hot day, he was in a hurry, or for whatever reason," the degree of Krantz's negligence is as a matter of law greater than any negligence Gehl may have had in the design and positioning of the beater bar clutch lever.

*By the Court.*—Judgment affirmed.

GARTZKE, P.J. (*dissenting.*) The trial court based its decision largely on *Schuh v. Fox River Tractor Co.,* 63 Wis. 2d 728, 743–45, 218 N.W.2d 279, 287–88 (1974). When *Schuh* was decided, the comparative negligence statute provided that a plaintiff could not recover if the plaintiff's negligence was equal to or greater than that of the defendant. *See id.* at 733 n. 1, 218 N.W.2d at 282. The law is now that contributory negligence does not bar recovery unless the plaintiff's negligence was greater than that of the defendant. Sec. 895.045, Stats. The *Schuh* court did not hold that the negligence of the plaintiff in that case was greater than that of the defendant farm machinery manufacturer. The court held only that the trial court was correct in determining that the negligence of the plaintiff equaled or exceeded that of the defendant. *Schuh,* 63 Wis. 2d at 744, 218 N.W.2d at 287. *Schuh* is not persuasive.

I accept the trial court's conclusions that Krantz was negligent, and that credible evidence supports a finding that the forage box was defectively designed so as to render the defendant liable under a strict liability theory. No one would suggest, however, that

the negligence of Krantz and the negligence of the manufacturer had anything in common. They are necessarily dissimilar and of different kinds.

The apportionment of negligence is ordinarily for the trier of fact. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660, 665 (1979). The instances in which a court may rule that, as a matter of law, the plaintiff's negligence exceeds or equals that of the defendant are extremely rare. *Davis v. Skille,* 12 Wis. 2d 482, 489, 107 N.W.2d 458, 462 (1961). And those instances in which the court may make such a ruling are ordinarily limited to cases where the negligence is of a similar kind or character. *Id.* For this reason, it is only in an unusual case that a court will upset a jury's apportionment, particularly where the negligence of each party is not of the same kind and character. *Jagmin v. Simonds Abrasive Co.,* 61 Wis. 2d 60, 83–84, 211 N.W.2d 810, 822 (1973), *Williams v. Milwaukee & Suburban Transport Co.,* 37 Wis. 2d 402, 408, 155 N.W.2d 100, 103 (1967), and *Mix v. Farmers Mutual Automobile Ins. Co.,* 6 Wis. 2d 38, 43, 93 N.W.2d 869, 873 (1959), are to the same effect.

In an unusual case, perhaps a court can conclude that where the acts of negligence by the plaintiff and the defendant differ in kind and quality, the negligence of each at least equals that of the other. But in my view, it is the extraordinary case in which a court may hold as a matter of law that the negligence of one party exceeds that of the other where the acts of negligence have nothing in common, as in a product liability case. This is particularly true in a products liability case involving a design defect. This is not an extraordinary case.

Accordingly, in my view, the trial court erred when it concluded that the negligence of Krantz exceeded that of the farm machinery manufacturer.