John HANSEN and Lucille Hansen, Plaintiffs-Petitioners-Appellants-Cross-Respondents,

ATRIUM HEALTH PLAN, INC. f/k/a HMO Midwest, a Wisconsin insurance corporation, Involuntary-Plaintiff,

v.

NEW HOLLAND NORTH AMERICA, INC., f/k/a Ford New Holland, Inc., Defendants-Respondents-Cross-Appellants, †

WAUGHTAL IMPLEMENT SALES, INC., a Wisconsin corporation and Federated Mutual Ins. Co., a foreign insurance corporation, Defendants-Respondents.†

Court of Appeals

*No. 97–0900. Submitted on briefs November 14, 1997.—Decided December 16, 1997.*

(Also reported in 574 N.W.2d 250.)

†Petition to review denied.

656

On behalf of the plaintiffs-petitioners-appellants-cross-respondents, the cause was submitted on the briefs of *Lynn R. Laufenberg* and *Cannon & Dunphy, S. C.* of Brookfield.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the brief of *Eric J. Magnuson* and *Stephen K. Warch* and *Rider, Bennett, Egan & Arundel, LLP* of Minneapolis, MN.

On behalf of defendants-respondents, the cause was submitted on the brief of *William M. Hart, Michael D. Hutchens* and *Joseph W.E. Schmitt* and *Meagher & Geer, P.L.L.P.* of Minneapolis, MN.

Before Cane, P.J., Myse and Hoover, JJ.

HOOVER, J. This is a products liability/negligence case. John and Lucille Hansen appeal a summary judgment dismissing their initial entanglement claim against the manufacturer of a hay baler, New Holland North America, and their initial injury and enhanced injury claims against the seller of the machine, Waughtal Implement Sales, Inc. The Hansens assert the trial court erred by (1) concluding that John confronted an open and obvious danger, which incorrectly formed the basis for its conclusion

that the product was not unreasonably dangerous and that John's negligence exceeded that of New Holland and Waughtal as a matter of law on the initial entanglement claim; and (2) by dismissing their enhanced injury claim against Waughtal. New Holland cross-appeals, contending the trial court erred by refusing to dismiss the Hansens' enhanced injury claim against it. We conclude the trial court erred by finding as a matter of law that the baler was not unreasonably dangerous. We further conclude that the trial court erred by finding Hansen's negligence exceeded that of the defendants and by dismissing the enhanced injury claim against Waughtal. Finally, we determine that the court correctly allowed the enhanced injury claim to proceed against New Holland. We therefore reverse the first three of the foregoing rulings, affirm the fourth, and remand for further proceedings.

In September 1993, John Hansen purchased a New Holland Model 640 Round Hay Baler from Waughtal Implement. It was the first New Holland baler Hansen had operated, and the first baler he had operated in thirty years. Hansen grew up on a farm, and graduated from high school in 1961. He worked on his father's farm for a year. From 1962 to 1990, however, Hansen worked at a variety of jobs, including working at a creamery, driving a truck, owning and operating a service station, and selling insurance.

Allan Anderson, a Waughtal employee, set up the baler at the Hansen farm and demonstrated its operation to Hansen in July 1994. After setting up the baler, Anderson did a "walk-around" with Hansen and baled some hay to familiarize him with the machine. Anderson returned to the farm the following day to repair a tracking problem, which he determined was caused by a buildup of hay on the rear rollers. To fix the

problem, Anderson climbed on top of the twine box and scraped the hay buildup off the rollers with a jackknife. To clean all sides of the rollers, Anderson had Hansen repeatedly re-engage the power take-off (PTO) with Anderson standing on the twine box. This allowed the roller to progress to a different position. After disengaging the PTO, Anderson cut hay from the new roller position.

On the day of the accident, Hansen observed hay buildup on the same roller that Anderson cleaned. Hansen was aware that the baler should not be cleared unless the PTO was disengaged. Hansen disengaged the PTO, climbed to the top of the baler and cut hay off the rollers from the same platform Anderson used. After he cut hay from one side of the roller, he climbed down and re-engaged the PTO to advance the roller. When he climbed to the platform, however, he discovered that the roller had returned to exactly the same position. He repeated this procedure a number of times with the same result.

Hansen determined the only way he could access the hay wrapped on other parts of the roller was to cut the hay with the rollers turning very slowly. He re-engaged the PTO at the tractor's idle speed, approximately 800 to 1,000 rpm. He climbed onto the machine and reached in to cut the hay. Although he is unsure how it happened, Hansen's fingertips were pulled into the rollers before he could react; it took fifteen to twenty minutes to extricate himself. Ultimately, his right arm was amputated just below his elbow.

Hansen initiated this suit against New Holland and Waughtal. During his deposition, Hansen acknowledged that he knew he could be injured if he came into contact with moving belts and rollers.

However, he thought that any danger of getting caught in the rollers "would be very minimal." His overall impression of the slowly moving belts and rollers was that "It didn't look that dangerous at that time."

New Holland and Waughtal brought motions for summary judgment. The trial court dismissed all claims against Waughtal and dismissed the initial injury claim against New Holland. The court concluded that as to the initial injury, the product was not defective because the dangerousness was open and obvious and not hidden. It therefore also determined that Hansen was more negligent than the defendants as a matter of law, and dismissed the initial injury claim against both defendants. As to the Hansens' enhanced injury claim, the court decided that the action should continue against New Holland,[1] but dismissed the claim against Waughtal.

■

We first address the Hansens' argument that the trial court erred by dismissing its initial injury claim against both defendants. When reviewing summary judgment, we apply the standard set forth in § 802.08(2), Stats., in the same manner as the circuit court. *Kreinz v. NDII Secs. Corp.*, 138 Wis. 2d 204, 209, 406 N.W.2d 164, 166 (Ct. App. 1987). If a dispute of any material fact exists, or if the material presented on the motion is subject to conflicting factual interpretations or inferences, summary judgment must be denied. *See State Bank v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916, 918 (Ct. App. 1986). The burden is on the moving party to establish the absence of a genuine issue of material fact, *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 984, 473 N.W.2d 506, 510 (Ct. App. 1991),

---

[1] We granted leave to the Hansens to appeal the non-final order on April 23, 1997.

and we draw all reasonable inferences in favor of the nonmoving party, *see Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980).

1. Strict Liability

■

"A defective product is unreasonably dangerous to the user or consumer when it is dangerous to an extent beyond which would be contemplated by the ordinary user or consumer possessing the knowledge of the product's characteristics which were common to the community." *Ransome v. WEPCO*, 87 Wis. 2d 605, 622, 275 N.W.2d 641, 649 (1979). "If the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective." *Vincer v. Esther Wms. All-Alum. S. Pool Co.*, 69 Wis. 2d 326, 332, 230 N.W.2d 794, 798 (1975). Whether a product contains a defect that is unreasonably dangerous is decided on a case-by-case basis. *Keller v. Welles Dept. Store*, 88 Wis. 2d 24, 32, 276 N.W.2d 319, 322 (Ct. App. 1979).

New Holland contends that *Yaun v. Allis-Chalmers Mfg. Co.*, 253 Wis. 558, 34 N.W.2d 853 (1948), decided almost fifty years ago, supports the conclusion that moving rollers present such an apparent danger that a manufacturer should not be liable where a person confronts the obvious danger. In *Yaun*, a plaintiff fell up the apron of a baler after he threw hay into it in an attempt to reengage twine that moved between the rollers. *Id.* at 562, 34 N.W.2d at 854. His right arm was caught between the rollers and had to be amputated. *Id.* Based upon the court's observation that the danger the rollers presented was apparent, and that the baler bore a sign, "Be Careful,"

it concluded that the manufacturer was not liable. *Id.* at 568–69, 34 N.W.2d at 858–59.

We conclude that the analysis in *Yaun* does not dispose of this case. First, *Yaun* involved a baler, but it was of a different design. The *Yaun* court held that the *particular* baler presented an open, apparent danger. Second, *Yaun* does not represent the Wisconsin Supreme Court's adoption of an open and obvious danger rule in products liability cases such that the manufacturer has no duty to guard against obvious dangers. *See Kutsugeras v. AVCO Corp.*, 973 F.2d 1341, 1346 (7th Cir. 1992). Finally, *Yaun* is a negligence case, decided before Wisconsin adopted strict products liability law. Wisconsin first adopted the rule of strict products liability as set forth in RESTATEMENT (SECOND) OF TORTS § 402A (1965) in *Dippel v. Sciano*, 37 Wis. 2d 443, 459, 155 N.W.2d 55, 63 (1967). Section 402A provides that one who sells any product in a defective condition unreasonably dangerous to the user or consumer is liable for resulting harm if other conditions are met. *Id.* The rule of strict products liability offers the plaintiff a theory of recovery for damages resulting from defective and unreasonably dangerous products independent of negligence and implied warranty law. *Glassey v. Continental Ins. Co.*, 176 Wis. 2d 587, 598, 500 N.W.2d 295, 300 (1993). Thus, as a negligence case, *Yaun* does not compel the conclusion that as a matter of law a manufacturer is not liable for the open danger posed by moving rollers.

Whether the "average user" would have "fully appreciated the attendant risk" of the baler is a factual issue for a jury. Hansen testified that he did not think that the slow moving belts and rollers presented a

danger at the time. Whether his appraisal reflects the average consumer's appreciation of the risk is a question of fact. Thus, we agree with the court in *Collins v. Ridge Tool Co.*, 520 F.2d 591, 596 (7th Cir. 1975), which held that "the unique facts of each case should bear on the question . . . whether . . . the dangers associated with the [machine] were indeed open and obvious to [the victim]." We conclude that whether the hay baler was unreasonably dangerous presents a material issue of fact, rendering summary judgment inappropriate.

The *Griebler*[2] decision's reliance on the landowner-invitee line of cases[3] together with its holding that the open and obvious danger in that case barred recovery against the manufacturer implied that, in products liability cases involving manufacturer-consumer relationships, the open and obvious danger doctrine serves as an absolute defense.[4] A review of a recent supreme court decision,[5]

[2] *Griebler v. Doughboy Recreational, Inc.*, 160 Wis. 2d 547, 466 N.W.2d 897 (1991).

[3] Historically, the open and obvious danger doctrine was a dispositive defense to an invitee's claim against a landowner, on the theory that a landowner owes no duty to warn or protect an invitee who should be able to discern and avoid obvious dangers. For a superior discussion and analysis of Wisconsin's open and obvious danger law, *see Westlund v. Werner Co.*, 971 F.Supp. 1277, 1280-81 (W.D. Wis. 1997).

[4] "The second issue presented by this appeal is whether Griebler confronted an open and obvious danger as a matter of law when he dove headfirst into water of unknown depth. In other words, the second issue before this court is whether the circuit court erred in granting summary judgment to the defendants." *Griebler*, 160 Wis. 2d at 559, 466 N.W.2d at 902.

[5] *Rockweit v. Senecal*, 197 Wis. 2d 409, 541 N.W.2d 742 (1995). This case held that two previous decisions abrogated

however, calls into question whether in manufacturer-consumer cases the doctrine continues to provide immunity, as opposed to merely being a factor in the fact-trier's apportionment of comparative negligence. The Hansens make a compelling argument as to why the doctrine should serve the latter function and not absolve a manufacturer of liability for design defects resulting in an open and obvious danger. We agree with the Hansens' contention that focusing solely on the user's conduct will frustrate public policy considerations underlying product liability law. A danger that is open and obvious to a consumer is equally apparent to the manufacturer. Concentrating only on the user's conduct ignores the manufacturer's responsibility for producing that danger, and indeed creates an incentive for manufacturers to ensure that hazards are in fact open and obvious, possibly minimizing needed safeguards and exposure to liability for designing dangerous products. Nonetheless, in deciding only that summary judgment was inappropriate in this case because there is an issue of fact regarding whether the circumstances presented an open and obvious danger, it is not necessary at this point to determine whether *Griebler* mandates immunity.

■

We further hold that the strict liability/initial entanglement claim should proceed against Waughtal. The strict liability rule adopted in *Dippel* applies to one who sells a defective, unreasonably dangerous product when certain conditions are met. *See id.* at 459, 155 N.W.2d at 63. Further, in *Nelson v. Nelson Hardware, Inc.*, 160 Wis. 2d 689, 698, 467 N.W.2d 518, 521 (1991),

common law immunity of landowner and subsumed the concept of open and obvious danger into a comparison of negligence.

our supreme court held that policy considerations justified extending strict liability rules to the non-manufacturer of a used product where the condition causing harm to the consumer arises out of the original manufacturing process. Whether the baler was unreasonably dangerous is a jury question. Thus, Waughtal may still potentially face liability if plaintiffs are able to prevail on their strict liability claim.

2. Negligence

Where the facts are undisputed, whether a plaintiff's negligence exceeds a defendant's negligence as a matter of law is a question of law that we review de novo. *See Kloes v. Eau Claire Cavalier Baseball Ass'n,* 170 Wis. 2d 77, 86, 487 N.W.2d 77, 81 (Ct. App. 1992). Typically, whether a condition is an open and obvious danger is a question of fact. *Griebler v. Doughboy Recreational, Inc.,* 160 Wis. 2d 547, 559, 466 N.W.2d 897, 902 (1991). In the ordinary negligence case, if the plaintiff confronts an open and obvious danger, it is merely an element to be considered by the jury in apportioning negligence and will not operate to completely bar the plaintiff's recovery. *Rockweit v. Senecal,* 197 Wis. 2d 409, 423, 541 N.W.2d 742, 748–49 (1995). The jury may also consider that the manufacturer has a duty to foresee reasonable abuses of the product. *See Schuh v. Fox River Tractor Co.,* 63 Wis. 2d 728, 742–43, 218 N.W.2d 279, 287 (1974). Finally, apportionment of negligence is ordinarily a question for the jury. *Kloes,* 170 Wis. 2d at 88, 487 N.W.2d at 81.

We conclude that whether Hansen's negligence exceeded that of New Holland and Waughtal presents

questions of fact that a jury should resolve. While in the context of manufacturer-consumer strict liability and landowner cases a defendant[6] may still owe no duty to a plaintiff who confronts a danger that is open and obvious, *see Hertelendy v. Agway Ins. Co.*, 177 Wis. 2d 329, 334–35, 501 N.W.2d 903, 906 (Ct. App. 1993), that rule is of limited applicability. *Id.* at 336, 501 N.W.2d at 906. It arose in common law and is applied in situations involving a landowner's duty to invitees or other special legal relationships. *Id.* As the *Hertelendy* court cautioned, because Wisconsin is a comparative negligence state, *see* § 895.045, STATS., the application of the open and obvious danger doctrine should be used only in cases where a strong public policy exists to justify such direct abrogation of comparative negligence principles. *Id.* at 339, 501 N.W.2d at 908. It should not be used to resolve liability issues in ordinary negligence cases. *Id.*

In the context of this case, we conclude that disputed factual issues regarding both defendants' negligence remain. These issues include: whether the baler presented an open and obvious danger; whether this particular abuse of the baler could be reasonably foreseen by the manufacturer; regarding Waughtal, whether Anderson's demonstration of how to use the baler was in some manner negligent; and finally, the apportionment of any party's negligence.

Further, none of the cases cited by the defendants persuade us that Hansen's negligence exceeded the defendants' as a matter of law. Defendants cite *Krantz v. Gehl Co.*, 146 Wis. 2d 398, 431 N.W.2d 675 (Ct. App. 1988), and *Schuh* to support their contention that the trial court correctly determined that Hansen was more

---

[6] *See supra* note 5.

negligent as a matter of law than the defendants. In *Krantz*, the plaintiff injured his hand after reaching into a forage box to remove excess hay. *Id.* at 402, 431 N.W.2d at 676. In *Schuh*, the plaintiff injured his leg after he slipped while standing on the rim of a crop blower and it became entangled in the fan. *Id.* at 730, 218 N.W.2d at 280. In each case, the trial court directed a verdict in favor of defendant. *Krantz*, 146 Wis. 2d at 402–03, 431 N.W.2d at 676–77; *Schuh*, 63 Wis. 2d at 731, 218 N.W.2d at 280. Defendants urge us to read these cases to stand for the proposition that, in certain circumstances, an operator of farm machinery should be held more negligent than the manufacturer as a matter of law.

While there may be some cases where that result is appropriate, we reject the contention that it is appropriate in the present case. Rather, the instances in which a court may rule that, as a matter of law, the plaintiff's negligence exceeds that of defendant are extremely rare. *See Huss v. Yale Materials Handling Corp.*, 196 Wis. 2d 515, 534, 538 N.W.2d 630, 637 (Ct. App. 1995). Summary judgment should only be used in the exceptional case where it is clear and uncontroverted that one party is substantially more negligent than the other and that no reasonable jury could reach a conclusion to the contrary. *Id.* at 535, 538 N.W.2d at 637. We disagree that the only reasonable conclusion a jury could draw from the facts and inferences in this case is that Hansen was more negligent than the defendants.

We concede that this is an extremely close case. A person who places himself in the position of this plaintiff, particularly with the PTO engaged, demonstrates considerable negligence. We are

unwilling, however, to conclude as a matter of law that his negligence exceeded the defendants'.

## 3. Enhanced Injury

We turn now to New Holland's cross-appeal. It contends that the trial court erred by refusing to dismiss the Hansens' enhanced injury claim against it, arguing that the Hansens failed to meet their burden of demonstrating a genuine issue of material fact supporting their claim. It asserts that testimony presented by the Hansens' expert witnesses does not constitute "evidentiary facts," but rather conclusive opinions.

We conclude that the testimony presented by the Hansens' expert witnesses consisted of relevant, admissible evidence that presents an issue of material fact.[7] At deposition, the Hansens presented John Sevart, a design engineer, and Carley Ward, a biomechanical engineer. Ward testified that Hansen "received friction burns and damage to his hand and forearm to the extent that the arm had to be amputated"; that he "was captured in the belt system for a period of time and that resulted in burning the flesh away and contaminating the wound to the point that the hand was no longer viable"; and that "the time in the machine contributed to the burning away of the tissue and the contamination of the wound." Sevart testified that had the baler been equipped with an emergency stop system, it could have prevented Hansen's enhanced injury.

---

[7] The previously discussed standard of review applies to this issue as well.

The opinions of expert witnesses are admissible. *See* § 907.02, STATS. If the opinion is expressed on a matter that is appropriate for expert opinion and the affiant is arguably an expert, the affidavit setting forth the expert's opinion is evidence of a factual dispute. *Paton v. La Prade*, 524 F.2d 862, 871 (3rd Cir. 1975). From our review of the record, Ward and Sevart were qualified to offer opinions as to the enhanced injury claim. New Holland appears to question the witnesses' qualifications for offering such opinions. It fails, however, to develop a sufficiently specific argument to demonstrate why the experts are not qualified to speak to this issue. We decline to develop New Holland's argument for it. *See State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139, 142 (Ct. App. 1987). Moreover, New Holland's arguments appear to more appropriately address the weight it believes the opinions are entitled to rather than their admissibility. We conclude that the testimony offered by the Hansens' experts was sufficient to raise a genuine issue of material fact and therefore summary judgment is precluded.

Finally, the Hansens contend that the trial court erred by dismissing their enhanced injury claim against Waughtal. Waughtal argues that under *Farrell v. John Deere Co.*, 151 Wis. 2d 45, 443 N.W.2d 50 (Ct. App. 1989), the enhanced injury claim should not proceed against a retailer because the manufacturer's liability alone is at issue.

We disagree. *Farrell* does not stand for the proposition that enhanced injury claims are valid only against the manufacturer of a product and that retailers are absolved from liability. In that case, the products liability/negligence claims against the

retailer settled prior to trial, leaving only the manufacturer to face the enhanced injury claim at trial. *See id.* at 56, 443 N.W.2d at 54. Nothing in *Farrell* precludes a plaintiff from asserting an enhanced injury claim against a retailer.

Further, the principles of *Dippel* and § 402A of the Restatement apply. Again, one who sells any product in a defective condition unreasonably dangerous to the user or consumer is liable for resulting harm if certain other conditions are met. *Dippel*, 37 Wis. 2d at 459–60, 155 N.W.2d at 63. We agree with the Hansens that there is no basis in law or logic to distinguish between those defective conditions which cause the original injury and those which cause enhanced injuries.

In sum, we conclude that the trial court erred by dismissing the initial injury claim against both defendants on the grounds that Hansen encountered an open and obvious danger; that it erred by dismissing the enhanced injury claim against Waughtal; and that it correctly concluded that the enhanced injury claim should continue against New Holland.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded. No costs on appeal.