No. 82,630

GENE DELANEY, *Appellant*, v. DEERE AND COMPANY and JOHN DEERE LIMITED, *Appellees*.

(999 P.2d 930)

Opinion filed March 10, 2000.

*John D. Gehlhausen*, of John Gehlhausen, P.C., of Lamar, Colorado, argued the cause, and *Eugene B. Ralston*, of Ralston & Pope. L.L.P., of Topeka, was with him on the briefs for appellant.

*Larry A. Withers*, of Kahrs, Nelson, Fanning, Hite & Kellogg L.L.P., of Wichita, argued the cause, and *Alan R. Pfaff, Donald N. Peterson*, and *Jerry D. Hawkins*, of the same firm, were with him on the briefs for appellee.

*William J. Pauzauskie*, of Oyler & Pauzauskie, of Topeka, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

DAVIS, J.: The United States Court of Appeals for the Tenth Circuit certifies two questions to this court in connection with a products liability lawsuit filed by Gene Delaney against Deere and Company and John Deere Limited (Deere). Delaney sued Deere for injuries he received when a large round hay bale fell from a homemade bale fork attached to a Deere front-end loader that Delaney was operating, crushing him. The district court granted summary judgment in favor of Deere. Delaney appealed and on its own motion, the Tenth Circuit Court of Appeals certified two

questions to this court concerning the manufacturer's duty to warn of obvious dangers and the legal effect of an adequate warning.

Certified Questions:

1. Does K.S.A. 60-3305(c) apply to a manufacturer's duty to warn or protect against hazards on a multiple use product, or only to the duty to warn, as implied by *Siruta*?

2. Does Kansas follow the portion of Comment j of the Restatement (Second) of Torts § 402A, which provides that a product bearing an adequate warning is not in defective condition, or instead, would Kansas now adopt Comment l [of the Restatement (Third) of Torts § 2], which provides that an adequate warning does not foreclose a finding that a product is defectively designed?

The Certification of State Law Question Order from the Tenth Circuit is set forth in full:

"Plaintiff-appellant Gene Delaney appeals the district court's grant of summary judgment to defendants-appellees Deere and Company and John Deere Limited ('Deere'). The district court dismissed Mr. Delaney's product liability claims on the basis that Kan. Stat. Ann. § 60-3305(c) (1994), does not require a manufacturer to either warn or protect against hazards that are open and obvious, and that Restatement (Second) of Torts § 402A comment j establishes as a matter of law that an adequate warning precludes a finding that a product is in defective condition. For the reasons stated herein, we certify the following questions to the Supreme Court of Kansas and retain appellate jurisdiction:

"Does Kan. Stat. Ann. § 60-3305(c) apply to a manufacturer's duty to warn or protect against hazards on a multiple use product, or only to the duty to warn, as implied by *Siruta*?

"Does Kansas follow the portion of comment j of the Restatement (Second) of Torts § 402A, which provides that a product bearing an adequate warning is not in defective condition, or instead, would Kansas now adopt comment l, which provides that an adequate warning does not foreclose a finding that a product is defectively designed?

"Background

"Mr. Delaney seeks recovery of damages for personal injuries he sustained when a large hay bale fell on him while he was operating a tractor with a front-end loader designed and manufactured by Deere. Mr. Delaney claims the design of the tractor/loader was defective and unreasonably dangerous and was not accompanied by adequate warnings.

"Mr. Delaney began using the tractor at issue in 1971 and purchased it in 1978 for use in his oil field business. He purchased the loader at issue in 1979 for the same use. The loader has the following warning, which he read and understood at the time of purchase:

'WARNING :

'To Prevent Bodily Injury

'1. Do not handle round bales with loader unless special John Deere round bale clamp is installed. Without clamp, bale can fall on operator when loader is raised.'

"At the time, Mr. Delaney was not in a business involving handling round bales. He does not remember re-reading the warning in 1990 when he returned to farming. Beginning in 1990, he sometimes moved round bales using the front-end loader with homemade bale forks nearly identical to those sold by Deere dealers. In doing so, he did not use the bale clamp mentioned in the warning, but instead lifted the bales a foot and a half off the ground with the loader. Despite the warning, Mr. Delaney alleges that this was a known and recognized farming practice.

"On the day of the accident, Mr. Delaney was moving bales using the bale fork on the front-end loader. As he drove the tractor in reverse, looking backward over his shoulder, one of the tractor's tires hit a stone post. The loader then rose in the air from its low position, and the hay bale fell on him. Mr. Delaney asserts that, at the time of the accident, his hand was on a different control lever than that used to raise the loader. He remembers this because the lever he used did not have a knob on it as did the levers for the loader. Thus, he believes that he did not accidentally cause the loader to rise.

"Mr. Delaney's expert, John Sevart, testified in his deposition that the loader could not have risen by itself without Mr. Delaney activating the control lever. However, Mr. Sevart submitted a supplemental report on May 14, 1997, after the deadline to file expert reports, which contradicted his deposition testimony. He wrote this report after he learned that, unknown to Mr. Delaney, the loader on Mr. Delaney's tractor had risen on its own on two prior occasions. Kenneth Rupp and Frank Smith revealed this information in their depositions on April 9, 1997. Deere filed its summary judgment motion on June 27, 1997.

"After large round bales were introduced in 1972, Deere designed and marketed special equipment to eliminate the risk of injury from bale drops or roll-downs. This equipment included the bale clamp described in the warning, as well as a bale fork and a bale hugger. Because the tractor and loader at issue are multiple use products and are used for much more than hauling large round bales, Deere did not make such equipment a standard attachment to its loaders.

"Discussion

"A.

"Mr. Delaney filed suit against Deere pursuant to the Kansas Product Liability

Act, Kan. Stat. Ann. §§ 60-3301 to -3307 (1994), alleging claims of strict liability and negligence. Kansas recognizes three ways in which a product can be defective: (1) a flaw is present in the product at the time it is sold; (2) the producer or assembler of the product fails to adequately warn of a risk or hazard related to the way the product was designed; or (3) the product, although perfectly manufactured, contains a defect that makes it unsafe.

*"Savina v. Sterling Drug, Inc.,* 795 P.2d 915, 923 (Kan. 1990). The district court held that, under Kan. Stat. Ann. § 60-3305(c), a manufacturer has no duty to protect against patent, open, or obvious risks. Section 60-3305 provides:

'In any product liability claim any duty on the part of the manufacturer or seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;

'(b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or

'(c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.'

"Kansas has adopted the consumer expectations test of Restatement (Second) of Torts § 402A comment i as the standard for design defects. See *Barnes v. Vega Indus., Inc.,* 676 P.2d 761, 762 (Kan. 1984). A product is 'unreasonably dangerous' only if it is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it.' Restatement (Second) of Torts § 402A cmt. i. Some courts applying the consumer expectations test have held that, if a product user actually knew or should have known of an open or obvious danger, the product itself is not defective. See, *e.g. Austin v. Clark Equipment Co.,* 48 F. 3d 833, 836 (4th Cir. 1995) (applying Virginia law). Other jurisdictions which have adopted the consumer expectation test have rejected the 'open and obvious danger' rule as an absolute exception to strict products liability in a defective design case. See *Lockley v. Deere & Co.,* 933 F.2d 1378 (8th Cir. 1991) (applying Arkansas law); Restatement (Third) of Torts § 2, Reporters' Note to § 2, cmt. d, part VI.C.

"The Kansas Supreme Court rejected the open and obvious danger rule in *Siruta v. Hesston Corp.,* 659 P.2d 799, 806 (Kan. 1983). *Siruta* involved a plaintiff who was injured by a hay baler and sued under a strict liability theory of defective design. The defendant maintained that the baler was not defective as a matter of law because the danger was open and obvious. The court disagreed: 'Simply be-

cause the hazard on a piece of equipment is open and obvious does not prevent it from being dangerous to the operator or consumer. The fact that the danger is patent and obvious may be an important factor in determining whether plaintiff's fault contributed to his own injury.' *Id.*

"In *Betts v. General Motors Corp.*, 689 P.2d 795, 801 (Kan. 1984), the Kansas Supreme Court clarified the relationship between the consumer expectation test of *Barnes* and the rejection of the open and obvious danger test in *Siruta.* The court stated that the proper test for jury instructions is the consumer expectations test, although this has nothing to do with evidence which may be offered at trial: 'In a products liability case involving a claimed design defect, the parties at the trial may present evidence as to the degree of the likelihood of harm from an intended and reasonably foreseeable use of the product and the feasibility of a safer design.' *Id.* This approach was affirmed in *Jenkins v. Amchem Prod., Inc.*, 886 P.2d 869, 890 (Kan. 1994).

"Our reading of *Siruta* thus suggests that § 60-3305(c) only applies to failure to warn claims. However, although *Siruta* was decided after the Kansas Product Liability Act was enacted in 1981, the court did not address § 60-3305. We are thus left with the difficulty of how to reconcile the introductory paragraph of § 60-3305, which refers to any duty 'to warn or protect against' a danger, with *Siruta.* The interpretation urged by Mr. Delaney—that § 60-3305(c) only applies to a duty to warn—seems to render meaningless the phrase 'or protect against,' which is contrary to 'the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.' *Mountain States Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (quoting *Colautti v. Franklin*, 439 U.S. 379, 392 (1979)). We are unable to confidently predict how the Kansas Supreme Court would construe the statute.

"The district court also held that Restatement (Second) of Torts § 402A comment j bars Mr. Delaney's claims. The portion of comment j upon which the court relied provides: 'Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.' The district court found that, had the warning been followed by Mr. Delaney (*i.e.*, had he used the bale clamp), the loader would have been safe for use, and thus concluded that the loader was neither in defective condition nor unreasonably dangerous.

"The portion of comment j at issue has never been explicitly adopted by a state court in Kansas, although this Court in *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1413 (10th Cir. 1988), implied that when Kansas adopted § 402A in *Brooks v. Dietz*, 545 P.2d 1104, 1108 (Kan. 1976), all of the comments of § 402A were adopted as well.

"The recent Restatement (Third) of Torts: Products Liability § 2, promulgated in 1997, takes issue with the contested portion of § 402A comment j. The reporters refer to the 'unfortunate language' of the comment and state that the comment

'is inconsistent with the judicial abandonment of the patent danger rule and with those cases that take the position that a warning will not absolve the manufacturer from the duty to design against dangers when a reasonable, safer design could have been adopted that would have reduced or eliminated the residuum of risk that remains even after a warning is provided.'

"Reporters' Note to § 2, cmt. d, Part IV.D. Comment l of § 2 states that '[w]arnings are not . . . a substitute for the provision of a reasonably safe design.'

"Because no Kansas court has directly addressed this conflict between comment j of § 402A and comment l of § 2, we are reluctant to encroach upon Kansas' authority to determine its citizens' rights and remedies by opining about the authority that either provision carries."

Accordingly, the 10th Circuit Court of Appeals certified the above questions to this court pursuant to K.S.A. 60-3201.

*1. Does K.S.A. 60-3305(c) apply to a manufacturer's duty to warn or protect against hazards on a multiple use product, or only to the duty to warn, as implied by* Siruta?

As noted by the 10th Circuit Court of Appeals, Kansas law recognizes three ways in which a product may be defective: (1) a manufacturing defect; (2) a warning defect; and (3) a design defect. See *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 114, 795 P.2d 915 (1990). The first certified question considers whether K.S.A. 60-3305(c) applies to all three types of defective product claims or only to the duty to warn.

In its grant of summary judgment to Deere, the district court first relied upon the pertinent provisions of K.S.A. 60-3305:

"In any product liability claim *any duty on the part of the manufacturer or seller of the product to warn or protect* against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend:

. . . .

*(c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.*" (Emphasis added.)

The district court reasoned that K.S.A. 60-3305 specifies "any duty to warn or protect," and that "the statute provides that when its stated conditions are met with adequate warnings, the defendant [Deere] has neither a duty to warn or to protect against dangers." The district court granted judgment to Deere because according

to its interpretation of K.S.A. 60-3305(c) the "duties of a 'manufacturer' " do not include warning or safeguarding against patent, open, or obvious risks which a reasonable user should have realized.

Delaney argues that K.S.A. 60-3305(c) applies to a duty to warn. According to Delaney, while Deere cannot be liable for failure to warn of a patent, open, or obvious danger, Deere may still be liable for a design or manufacturing defect even though the danger caused by that defect may be patent, open, or obvious.

The first certified question dealing with the application and scope of K.S.A. 60-3305(c) is one of statutory interpretation. The interpretation of a statute is a question of law, and this court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). The fundamental rule applied in construing a legislative enactment is that the intent of the legislature governs. *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 702, 957 P.2d 379 (1998). Where the language used is clear and the meaning is subject to but one interpretation, an appellate court applies the expressed intent of the legislature. See *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). However, where the face of the statute leaves its construction uncertain, the court is not limited to a consideration of the language used but may consider the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various considerations suggested. See *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, 156, 955 P.2d 1169 (1998).

It is presumed the legislature understood the meaning of the words it used and intended to use them, that the legislature used the words in their ordinary and common meaning, and the legislature intended a different meaning when it used a different language in the same connection in different parts of a statute. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 8, 834 P.2d 368 (1992).

K.S.A. 60-3305 is not a model of clarity. It provides that any duty on the part of the manufacturer shall not extend "to warnings, protecting against or instructing with regard to dangers, hazards or

risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product." Delaney argues that the phrase "protecting against or instructing with regard to" modifies the word "warnings." Accordingly, K.S.A. 60-3305(c) provides that a manufacturer or seller has no duty to give a warning which protects against or a warning which instructs with regard to a patent, open, or obvious danger. Deere, however, pointing to the introductory language in K.S.A. 60-3305, argues that subsection (c) provides three alternatives—a manufacturer or seller has no duty to warn of obvious danger, to protect against obvious danger, or to instruct with regard to obvious danger.

The language used by the legislature in K.S.A. 60-3305 has caused confusion among courts and legal commentators alike. See *Olson v. U.S. Industries, Inc.*, 649 F. Supp. 1511, 1517 (D. Kan. 1986); Westerbeke, *Survey of Kansas Law: Torts*, 33 Kan. L. Rev. 1, 50 (1984); Westerbeke, *Some Observations on the Kansas Product Liability Act*, 54 J.K.B.A. 39, 43-46 (1985); Dickerson & Richmond, Products Liability Litigation in Kansas, 103, 145 (1994). *Olson* concluded without analysis that under K.S.A. 60-3305(c) "the duties of a 'manufacturer' do not include warning or safeguarding against patent, open or obvious risks which a reasonable user should have realized." 649 F.Supp. at 1517. Similar sparse analysis led Stephen G. Dickerson and Douglas R. Richmond, authors of the treatise Product Liability Litigation in Kansas, to conclude that K.S.A. 60-3305 applies only to warning defect claims, and not to design defects. See Product Liability Litigation in Kansas at pp. 103, 145. Westerbeke, in his annual review of changes in Kansas tort law, initially concluded that K.S.A. 60-3305(c) applies to all theories of product liability. See 33 Kan. L. Rev. at 50 (1984). However, a year later, based upon a thorough analysis of the statutory provisions, Westerbeke concluded that K.S.A. 60-3305(c) applies only to warning defect claims. See Westerbeke, 54 J.K.B.A. at 43-46.

While this court has examined K.S.A. 60-3305, our examination has been within the context of warnings claims. See *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 757, 861 P.2d 1299 (1993); *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 60, 661 P.2d 348

(1983); *Miller v. Lee Apparel Co.*, 19 Kan. App. 2d 1015, 1023, 881 P.2d 576, *rev. denied* 256 Kan. 995 (1994). In *Siruta v. Hesston Corp.*, 232 Kan. 654, 664, 659 P.2d 799 (1983), we considered whether an open and obvious product danger foreclosed a product liability claim based on design defect and concluded that an open or obvious defect does not prevent the product from being defective in design. However, the facts giving rise to the cause of action in *Siruta* occurred prior to enactment of the Kansas Product Liability Act (KPLA), K.S.A. 60-3301 *et seq.*, and K.S.A. 60-3305 was neither discussed nor applied in *Siruta*.

Does K.S.A. 60-3305(c) apply only to warnings defects or does it apply more broadly to warnings, design, and manufacturing defects? Other than a general recognition that the KPLA was patterned after the Model Uniform Product Liability Act (MUPLA), 44 Fed. Reg. 62,714 *et seq.* (1979), Kansas legislative history provides little help in the interpretation of K.S.A. 60-3305. However, based upon an analysis of the statute with existing case law and a consideration of provisions of the MUPLA, we are able to conclude that the legislature intended that K.S.A. 60-3305(c) apply to warnings only.

An interpretation limiting K.S.A. 60-3305(c) to warnings is supported by the express provisions of the statute. Had the legislature intended for the phrase *"warnings*, protecting against or instructing with regard to" to list three alternatives, the correct phrase would have been *"warning*, protecting against or instructing" rather than the plural "warnings" used. The use of "warning" singular would have made "warning" an adverb, as in "protecting against" and "instructing" rather than a noun, as the word "warnings" is. If the word "warnings" is merely one of three alternatives, the statute should then make sense if the other two alleged alternatives "protecting against or instructing with regard to" are removed. However, when treated in that fashion, the phrase states that a manufacturer's or seller's duty shall not extend to "warnings . . . dangers, hazards or risks" and makes little, if any, sense. Moreover, the legislature already used the phrase "warn or protect" in K.S.A. 60-3305. Had the legislature intended for the phrase in K.S.A. 60-3305(c) "warnings, protecting against or instructing

with regard to" to encompass three alternatives, the language would be redundant.

It is generally understood that the duty to warn encompasses two separate duties; the duty to provide a warning to dangers inherent in use and the duty to provide adequate instructions for safe use. See 3 American Law of Products Liability 3d, § 32.20. This general understanding supports the conclusion that "protecting against or instructing with regard to" modifies warnings, making it clear that it applies to both the duty to protect the consumer by warning of dangers and instructing with regard to use.

A second reason for our decision that K.S.A. 60-3305(c) applies only to warnings hinges on the language employed in the statute as compared to the other statutes that make up the KPLA, K.S.A. 60-3301 *et seq.* The KPLA was enacted in 1981 and is based on the MUPLA. See *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. at 756. In *Patton,* we noted that the purpose of the KPLA was "to limit the rights of plaintiffs to recover in product liability suits generally and to judge a product for an alleged defect only when it is first sold." 254 Kan. at 752.

In order to achieve that purpose, the KPLA contains provisions which limit in different ways the ability of a plaintiff to recover. K.S.A. 60-3303 provides that a product seller "shall not be subject to liability" for harm caused after the "useful safe life" of the product has expired. K.S.A. 60-3304 provides that a product is "not defective" under certain circumstances where it was in compliance with regulatory standards when manufactured. K.S.A. 60-3306 provides that a seller "shall not be subject to liability" under circumstances set forth. In contrast to these express provisions for nonliability and nondefectiveness, K.S.A. 60-3305 covers only instances where the duty of the manufacturer does not extend. Had the legislature intended to completely foreclose the responsibility of the manufacturer to take any steps whatsoever to protect the consumer against a patent, open, and obvious defect, it is difficult to believe that it would not have clearly stated this intention as it did in other provisions of the Act.

Deere argues that because the purpose of the KPLA is to restrict the rights of plaintiffs to recover, K.S.A. 60-3305 should be read

consistent with that purpose as a broad restriction. We do not agree. It is true that one of the purposes of the KPLA is to restrict the ability of plaintiffs to recover. However, both Delaney's and Deere's interpretations of K.S.A. 60-3305(c) serve this purpose by restricting the ability of plaintiffs to recover for dangers which are patent, open, or obvious. The difference is merely one of degree.

Moreover, the MUPLA states that its goals are to "provide a fair balance of the interests of both product users and sellers and to eliminate existing confusion and uncertainty about their respective legal rights and obligations." 44 Fed. Reg. at 62,716. It further states that "[t]he fulfillment of these goals should help, first, to assure that persons injured by unreasonably unsafe products will be adequately compensated for their injuries and, second, to make product liability insurance more widely available and affordable, with greater stability in rates and premiums." 44 Fed. Reg. at 62,716. The interpretation advanced by Deere would create an imbalance and frustrate the goals of the MUPLA.

Applying K.S.A. 60-3305(c) to manufacturing and design defects is contrary to a common-sense reading of the statute and is contrary to the espoused philosophy underlying the MUPLA which provided some of the rationale for the Kansas Legislature to adopt the KPLA. See *Patton*, 253 Kan. at 756. Adopting an interpretation that would foreclose any action where a danger is open and obvious goes far beyond providing a fair balance of the interest of both product users and sellers. Rather, such an interpretation would tend to discourage product safety by allowing manufacturers and sellers to market products with open and obvious dangers to the consumer where a defect is capable of reasonable correction. We are convinced that if the legislature had meant to turn its back on the modern rule and categorically eliminate any duty on the part of the manufacturer to safeguard against open and obvious dangers, it would have done so in a more explicit manner than the language used in K.S.A. 60-3305(c).

The conclusion that K.S.A. 60-3305(c) applies to warning claims makes sense when considered in the above context. As noted by the MUPLA, "a manufacturer should be able to assume that the ordinary product user is familiar with obvious hazards—that knives

cut, that alcohol burns, that it is dangerous to drive automobiles at high speed." 44 Fed. Reg. at 62,725. The vast majority of states addressing the issue have found this to be a well-reasoned rule. See *Entrekin v. Atlantic Richfield Co.*, 519 So. 2d 447, 450 (Ala. 1987); *Ross Laboratories v. Thies*, 725 P.2d 1076 (Alaska 1986); *Raschke v. Carrier Corp.*, 146 Ariz. 9, 703 P.2d 556 (1985); *Hergeth, Inc. v. Green*, 293 Ark. 119, 733 S.W.2d 409 (1987); *Rosburg v. Minnesota Mining & Mfg. Co.*, 181 Cal. App. 3d 726, 226 Cal. Rptr. 299 (1986); *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo. 1992); *Tomer v. American Home Products Corporation*, 170 Conn. 681, 689, 368 A.2d 35 (1976); *Ogletree v. Navistar International Transportation Corporation*, 269 Ga. 443, 500 S.E. 2d 570 (1998); *Josue v. Isuzu Motors America, Inc.*, 87 Hawaii 413, 958 P.2d 535 (1998); *Post v. American Cleaning Equipment Corporation*, 437 S.W.2d 516, 520 (Ky. 1968); *Moran v. Faberge*, 273 Md. 538, 554, 332 A.2d 11 (1975); *Carey v. Lynn Ladder & Scaffolding*, 427 Mass. 1003, 691 N.E.2d 223 (1998); *Wiegerink v. Mitts and Merrill*, 182 Mich. App. 546, 452 N.W.2d 872 (1990); *Westerberg v. School District No. 792*, 276 Minn. 1, 148 N.W.2d 312 (1967); *Grady v. American Optical Corp.*, 702 S.W.2d 911 (Mo. App. 1985); *Dema v. Shore Enterprises, Ltd.*, 312 S.C. 528, 435 S.E.2d 875 (Ct. App. 1993); *Jahnig v. Coisman*, 283 N.W.2d 557 (S.D. 1979); *Pfizer v. Jones*, 221 Va. 681, 272 S.E.2d 43 (1980); *Hansen v. New Holland North America, Inc.*, 215 Wis. 2d 655, 574 N.W.2d 250 (Ct. App. 1997); *Kuras v. International Harvester Co.*, 820 F.2d 15 (1st Cir. 1987) (interpreting Rhode Island law); *Complaint of Diehl*, 610 F. Supp. 223 (D. Idaho 1985) (interpreting Idaho law); Miss. Code Ann. § 11-1-1-63 (1999 Supp.); N.C. Gen. Stat. § 99B-5(b) (1999); Ohio Rev. Code Ann. § 2307.76(B) (Anderson 1998); Tenn. Code Ann. § 29-28-105(d) (1980).

This interpretation is also consistent with our rejection of the open and obvious danger rule in *Siruta*. In that case, we emphasized that "[s]imply because the hazard on a piece of equipment is open and obvious does not prevent it from being dangerous to the operator or consumer." 232 Kan. at 664. The view that a manufacturer has no liability for a danger which is open and obvious is contrary to the modern rule that in a case alleging defective design,

the obviousness of the product's danger is merely one factor to consider in the analysis of whether a particular design is reasonable. See 2 American Law of Products Liability 3d § 28:82. Although still recognized in a few jurisdictions, the open and obvious rule barring recovery in a design defect case has much less support nationally. See N.J. Stat. Ann. 2A:58C-3(a)(2); *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421 (7th Cir. 1992); *Kearney v. Phillip Morris, Inc.*, 916 F. Supp. 61 (D. Mass. 1996); *Lust v. Clark Equip. Co.*, 792 F.2d 436 (4th Cir. 1986); *Inman v. Heidelberg Eastern*, 917 F. Supp. 1154 (E.D. Mich. 1996); *Sumnicht v. Toyota Motor Sales, Inc.*, 121 Wis. 2d 338, 360 N.W.2d 2 (1984). Even many of those states applying the rule limit its application. See N.J. Stat. Ann. 2A:58C-3(a)(2) (rule does not apply to industrial machinery, equipment used in the workplace, or dangers that can be feasibly eliminated without impairing the usefulness of the product); *Kearney v. Phillip Morris*, 916 F. Supp. 61 (rule applies only to common, everyday products); *Inman v. Heidelberg Eastern*, 917 F. Supp. 1154 (rule applies only to simple tools).

We understand Deere's assertion that the legislature's use of the phrase "warn or protect" in the introductory portion of K.S.A. 60-3305 signifies an intent that all three subsections include the two separate duties to warn and to protect. The 10th Circuit Court of Appeals highlighted this argument in its certification order by stating:

"We are thus left with the difficulty of how to reconcile the introductory paragraph of § 60-3305, which refers to any duty 'to warn or protect against' a danger, with . . . . [t]he interpretation . . . that § 60-3305(c) only applies to a duty to warn [which] seems to render meaningless the phrase 'or protect against,'. . . contrary to 'the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.' "

While reconciliation of these seemingly disparate sections of the K.S.A. 60-3305 is difficult, we must observe that the canon of construction referred to above is subject to the more fundamental canon that the intent of the legislature governs where it can be ascertained. The plain language of K.S.A. 60-3305(c) signifies an intent to limit its application to warnings. Adoption of the construction suggested by Deere would render much of the language used

in the subsection redundant and unnecessary. Moreover, the language used by the legislature in K.S.A. 60-3305 is inconsistent with language used in other statutes where the legislature's purpose was to completely exempt manufacturers and sellers from liability. In context and consistent with existing law, we believe that legislative intent of K.S.A. 60-3305(c) was to limit its application to warnings only.

For the above reasons, we conclude that K.S.A. 60-3305(c) applies only to warnings. As noted in *Siruta*, "[t]he fact that the danger is patent and obvious may be an important factor in determining whether plaintiff's fault contributed to his own injury" but such is not a statutory bar under the provisions of K.S.A. 60-3305(c). See 232 Kan. at 664.

*(2) Does Kansas follow the portion of Comment j of the Restatement (Second) of Torts § 402A, which provides that a product bearing an adequate warning is not in defective condition, or instead, would Kansas now adopt Comment l of the Restatement (Third) of Torts § 2, which provides that an adequate warning does not foreclose a finding that a product is defectively designed?*

We turn now to the question of whether Kansas law follows the portion of Comment j of the Restatement (Second) of Torts § 402A, which provides that a product bearing an adequate warning is not in defective condition, or whether Kansas instead would adopt Comment l of the Restatement (Third) of Torts § 2 (1997), which provides that an adequate warning does not foreclose a finding that a product is defectively designed. A complete answer to this second question involves consideration of Kansas law in relation to the Restatement (Second) of Torts § 402A and the Restatement (Third) of Torts § 2.

*Kansas Law and Comment j, Restatement (Second)*
*of Torts § 402A.*

Does Kansas follow the following italicized portion of Comment j to the Restatement (Second) of Torts § 402A: "Where warning is given, the seller may reasonably assume that it will be read and heeded; *and a product bearing such a warning, which is safe for*

*use if it is followed, is not in defective condition, nor is it unreasonably dangerous"*?

*Deere* observes that this court has previously embraced a portion of Comment j in *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984), and argues that given the opportunity this court would adopt Comment j in its entirety.

*Wooderson* was a strict products liability action against Ortho Pharmaceutical Corporation for harm caused by claimant's ingestion over a period of years of the oral contraceptive Ortho-Novum 1/80. Among other issues raised on appeal, we resolved the question regarding causation by relying on a portion of Comment j, Restatement (Second) of Torts § 402A:

" 'Comment j [to § 402A] provides a presumption that an adequate warning would be heeded. This operates to the benefit of a manufacturer where adequate warnings in fact are given. Where warnings are inadequate, however, the presumption is in essence a presumption of causation.' (Citation omitted.)." 235 Kan. at 410.

A critical distinction between the case we now consider and *Wooderson* is that the *Wooderson* claim arose within the context of Comment k of the Restatement (Second) of Torts § 402A instead of Comment j. Comment k involves a product which is faultlessly designed and manufactured but nevertheless unreasonably dangerous within the meaning of § 402A if not accompanied by proper warnings. See Restatement (Second) of Torts § 402A Comment k. Unlike Comment j, Comment k assumes that maximum manufacturing and design safety has been reached in the manufacture and sale of the product. In such situations, an adequate warning is the only method a manufacturer or seller has for making its product reasonably safe for use. In these circumstances, the issue becomes one concerning the adequacy of the warning given.

Unlike *Wooderson*, there is no assumption in this case that maximum manufacturing and design safety has been reached in the manufacture and sale of the tractor/loader. The issue dividing the parties in this case is design safety, an issue that simply did not exist in *Wooderson*. Nothing contained in the *Wooderson* opinion suggests that this court would, under the facts of this case, adopt Comment j in its entirety.

Deere also argues that the 10th Circuit Court of Appeals in *Wheeler v. Deere*, 862 F. 2d 1404 (10th Cir. 1976), implied that this court adopted § 402A and all of Comment j by reason of our decision in *Brooks v. Dietz*, 218 Kan. 698, 545 P.2d 1104 (1976). While this court in *Brooks* adopted strict liability, our holding related exclusively to the main text of § 402A: "We have concluded the time has come for this court to adopt the rule of strict liability as set out in § 402A of the Restatement, *supra*, and we therefore so hold." 218 Kan. at 702. Thus, as the 10th Circuit Court of Appeals pointed out in its certification order, this court has never dealt directly with that portion of Comment j and the question presented is one of first impression.

Comment j § 402A of the Restatement (Second) of Torts has generated considerable comment and criticism. The Restatement reporters alone, have written volumes in criticism of Comment j and support of the Restatement (Third) Comment l. See Henderson and Twerski, *A Proposed Revision of Section 402A of the Restatement (Second) of Torts*, 77 Cornell L. Rev. 1512 (1992); Henderson, *Restatement Third, Torts: Products Liability: What Hath the ALI Wrought?*, 64 Def. Couns. J. 501 (1997); Henderson and Twerski, *The Politics of the Products Liability Restatement*, 26 Hofstra L. Rev. 667 (1998); Twerski, *In Defense of the Products Liability Restatement: Part I*, 8 Kan. J.L. & Pub. Pol'y. 27 (1998); Twerski, *In Defense of the Products Liability Restatement: Part II*, 8 Kan. J.L. & Pub. Pol'y. 54 (1998). Other commentators have discussed the problems with Comment j as well. See, *e.g.* Latin, *"Good" Warnings, Bad Products, and Cognitive Limitations*, 41 U.C.L.A. L. Rev. 1193 (1994); Owen, *Defectiveness Restated: Exploding the "Strict" Products Liability Myth*, 1996 U. Ill. L. Rev. 743 (1996); Twerski, Weinstein, Donaher, and Piehler, *The Use and Abuse of Warnings in Products Liability—Design Defect Litigation Comes of Age*, 61 Cornell L. Rev. 495 (1976).

The reporters of the Restatement (Third) of Torts fault Comment j because it "allows a defendant to escape liability for inadequate design by simply warning against risks." See Henderson and Twerski, *The Politics of the Products Liability Restatement*, 26 Hofstra L. Rev. at 689 (1998). Delaney, noting this criticism, argues

that this court should reject Comment j because it constitutes "poor public policy" and constitutes a blanket grant of immunity to unreasonably dangerous and defective products.

Deere counters with the argument that the intent of Comment j was never to grant blanket immunity to unreasonably dangerous and defective products. According to Deere, a product that is "unreasonably dangerous and defective" can never be rendered safe through an adequate warning. Deere emphasizes that Comment j by using the words "which is safe for use" means that a product defective in design or in its manufacturing is subject to liability notwithstanding the adequacy of the warning given. However, inclusion of the phrase "which is safe for use if it is followed" indicates to this court that under Comment j a warning concerning risks or hazards, which warning would have prevented injury or damage if followed, renders the product safe or "not in defective condition, nor unreasonably dangerous."

The thrust of the criticism leveled at Comment j is that it allows an adequate warning to absolve the manufacturer of its duty to design against dangers when a reasonably safer design could have been adopted that would have reduced or eliminated the residuum of risk that remains even after a warning is provided. A manufacturer or seller is allowed to produce a product with an unsafe design and still escape liability through the use of a warning.

The Massachusetts Supreme Court in *Uloth v. City Tank Corp.*, 376 Mass. 874, 384 N.E.2d 1188 (1978), highlighted the problems involved with allowing the use of warnings to substitute for a reasonably safe design:

"An adequate warning may reduce the likelihood of injury to the user of a product in some cases. We decline, however, to adopt any rule which permits a manufacturer or designer to discharge its total responsibility to workers by simply warning of the dangers of a product. Whether or not adequate warnings are given is a factor to be considered on the issue of negligence, but warnings cannot absolve the manufacturer or designer of all responsibility for the safety of the product. . . .

"Moreover, a user may not have a real alternative to using a dangerous product, as where a worker must either work on a dangerous machine or leave his job. (Citations omitted.) Further, a warning is not effective in eliminating injuries due to instinctual reactions, momentary inadvertence, or forgetfulness on the part of

a worker. One of the primary purposes of safety devices is to guard against such foreseeable situations. Twerski, Weinstein, Donaher & Piehler, The Use and Abuse of Warnings in Products Liability—Design Defect Litigation Comes of Age, 61 Cornell L. Rev. 495, 509 (1976).

"Balanced against the somewhat limited effectiveness of warnings is the designer's ability to anticipate and protect against possible injuries. If a slight change in design would prevent serious, perhaps fatal, injury, the designer may not avoid liability by simply warning of the possible injury. We think that in such a case the burden to prevent needless injury is best placed on the designer or manufacturer rather than on the individual user of a product. 'In today's world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose. . . .' (Citations omitted.)" 376 Mass. at 879-81.

The rule adopted in Comment j is also inconsistent with this court's longstanding rejection of the open and obvious danger rule. See *Siruta v. Hesston Corp.* 232 Kan. 654, 659 P.2d 799 (1983); Restatement (Third) of Torts § 2, Reporters' Note to Comment d, Part IV. D (noting the inconsistency between Comment j and the judicial abandonment of the patent, open, and obvious danger rule); see also Annot., 35 A.L.R. 4th 861. In *Siruta*, we stated that "[s]imply because the hazard on a piece of equipment is open and obvious does not prevent it from being dangerous to the operator or consumer." 232 Kan. at 664. Similarly, just because there is a warning on a piece of equipment, the warning does not prevent the equipment from being dangerous. A patent and obvious danger may be an important factor in determining whether plaintiff's fault contributed to his or her own injury but does not foreclose the inquiry of whether the product was defectively designed.

For the above stated reasons, we decline to adopt that portion of Comment j which holds that a product bearing a warning which is safe for use if the warning is followed is not in a defective condition or unreasonably dangerous.

*Would Kansas now adopt Comment l, [Restatement (Third) of Torts § 2] which provides that an adequate warning does not foreclose a finding that a product is defectively designed?*

Comment l states, in its entirety:

"l. *Relationship between design and instruction or warning.* Reasonable designs and instructions or warnings both play important roles in the production and

distribution of reasonably safe products. In general, when a safer design can reasonably be implemented and risks can reasonably be designed out of a product, adoption of the safer design is required over a warning that leaves a significant residuum of such risks. For example, instructions and warnings may be ineffective because users of the product may not be adequately reached, may be likely to be inattentive, or may be insufficiently motivated to follow the instructions or heed the warnings. However, when an alternative design to avoid risks cannot reasonably be implemented, adequate instructions and warnings will normally be sufficient to render the product reasonably safe. Compare *Comment e*. Warnings are not, however, a substitute for the provision of a reasonably safe design.

"The fact that a risk is obvious or generally known often serves the same function as a warning. See *Comment j*. However, obviousness of risk does not necessarily obviate a duty to provide a safer design. Just as warnings may be ignored, so may obvious or generally known risks be ignored, leaving a residuum of risk great enough to require adopting a safer design. See Comment d.

"*Illustration:*

"14. Jeremy's foot was severed when caught between the blade and compaction chamber of a garbage truck on which he was working. The injury occurred when he lost his balance while jumping on the back step of the garbage truck as it was moving from one stop to the next. The garbage truck, manufactured by XYZ Motor Co., has a warning in large red letters on both the left and right rear panels that reads '**DANGER-DO NOT INSERT ANY OBJECT WHILE COMPACTION CHAMBER IS WORKING-KEEP HANDS AND FEET AWAY**.' The fact that adequate warning was given does not preclude Jeremy from seeking to establish a design defect under *Subsection (b)*. The possibility that an employee might lose his balance and thus encounter the shear point was a risk that a warning could not eliminate and that might require a safety guard. Whether a design defect can be established is governed by *Subsection (b)*." (Emphasis added.)

Deere observes that the adoption of Restatement of Torts (Third) § 2, Comment l would be contrary to the existing Kansas law in the field of products liability. We agree.

Comment l incorporates the definition of design defect contained in § 2(b) of the Third Restatement in order to determine whether a product is defective. Adoption of Comment l necessarily includes both the concept of reasonable alternative design and risk/utility analysis in determining design defect.

Restatement (Third ) of Torts § 2 provides that a product

"(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the com-

mercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe."

Application of the above definition under the Third Restatement is set forth in Comment f. The definition starts with a reasonable alternative design and identifies a broad range of factors which may be considered in determining whether an alternative design is reasonable and whether its omission renders the product not reasonably safe. See Comment f. The factors include, among others, the magnitude and probability of the foreseeable risk of harm, the instructions and warnings accompanying the product, the nature and strength of consumer expectations regarding the product; the likely effects of the alternative design on production costs; the effects of the alternative design on product longevity, maintenance, repair, and esthetics; and the range of consumer choice among products are factors that may be taken into account. See Restatement (Third) of Torts § 2, Comment f.

Thus, the Third Restatement exclusively adopts a risk/utility analysis in determining whether a design defect exists, with consumer expectation considered only as one element in the analysis. In Comment g, the Restatement concludes that consumer expectations do not play a determinative role in determining defectiveness.

Kansas, however, adheres to the consumer expectations test. In *Lester v. Magic Chef*, 230 Kan. 643, 641 P.2d 353 (1982), this court adopted the consumer expectations test set forth in Comment i of the Restatement (Second) of Torts, § 402A as the standard for measuring design defects in Kansas. This test defines an unreasonably dangerous product as one which is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts, § 402A, Comment i. In so doing, we rejected an alternative risk-utility analysis based on *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 431, 143 Cal. Rptr. 225, 573 P.2d 443 (1978). That test would have provided that in evaluating the adequacy of a product's design a jury should consider as relevant factors (1) the gravity

of the danger posed by the challenged design; (2) the likelihood that such danger would occur; (3) the mechanical feasibility of a safer alternative design; and (4) the adverse consequences to the product and to the consumer that would result from an alternative design. 230 Kan. at 659. (Prager, J., dissenting.) However, the case was a close one, with four justices favoring the consumer expectations test and three in favor of the risk/utility test as the standard. See 230 Kan. at 654-662. We have since continually reaffirmed that the consumer expectations test is the test in Kansas with regard to design defects. See *Barnes v. Vega Industries, Inc.*, 234 Kan. 1012, 1014, 676 P.2d 761 (1984); *Betts v. General Motors Corp.*, 236 Kan. 108, 115, 689 P.2d 795 (1984); *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 630, 886 P.2d 869 (1994).

Certainly, the consumer expectations test has its failings. See *Lester*, 230 Kan. at 655 (Prager, J., dissenting). In his dissent, Justice Prager noted that the consumer expectations test does not address situations where the consumer cannot be said to have had expectations with regard to the safety of many features of complexly made products. 230 Kan. at 655-56. In *Jenkins*, 256 Kan. at 623, we also noted the California Supreme Court's opinion in *Soule v. General Motors Corp.*, 8 Cal. 4th 548, 34 Cal. Rptr. 2d 607, 882 P.2d 298 (1994), criticizing the use of the consumer expectations test in complex products liability cases, and stated that it would be "worthy of discussion" had we not otherwise disposed of the issue.

The consumer expectations test is that standard in Kansas for determining whether a design defect exists. However, we also recognize the validity of risk/utility analysis as a guide in determining the expectations of consumers in complex cases. In *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 694 A.2d 1319 (1997), the Connecticut Supreme Court upheld the consumer expectations test but authorized the incorporation of risk utility factors to help the jury in its determination of what an ordinary consumer would reasonably expect. 241 Conn. at 220-21. The *Potter* court quoted the Supreme Court of Washington in *Seattle-First Nat'l Bank v. Tabert*, 86 Wash. 2d 145, 154, 542 P.2d 774 (1975):

"In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of

the potential harm from the claimed defect and the cost and feasibility of elimi-
nating or minimizing the risk may be relevant in a particular case. In other in-
stances the nature of the product or the nature of the claimed defect may make
other factors relevant to the issue."

We are convinced that in products liability cases, consumer expec-
tations play a dominant role in the determination of defectiveness.
Addressing this concern, Professor Marshall Shapo observed in his
comments upon the Third Restatement's failure to recognize the
efficacy of consumer expectations, Shapo, *Defective Restatement
Design*, 8 Kan. J.L. & Pub. Pol'y 59, 60 (1998):

"A broad concern about the [Third] Restatement as published stems from its
single-minded emphasis on a risk/utility test. This seems to me, by itself, is an
impoverished concept. It is impoverished especially insofar as the reporters ruled
out consumer expectations as an independent test. They thereby ignored the cen-
trality of what we all know as people and what I would hope that you would
recognize as judges: the centrality of product portrayals and images and their role
in creating consumer motives to purchase or encounter products."

While we acknowledge some of the weaknesses of the consumer
expectations test highlighted in *Lester* and our comments in *Jen-
kins,* it is not for us to speculate whether this court, in an appro-
priate case, would modify the consumer expectations test as the
Connecticut Supreme Court did in *Potter.*

Another important problem with the adoption of Comment 1 is
that the Restatement (Third) of Torts mandates the submission of
a reasonable alternative design in most cases to determine whether
there is a design defect. The Third Restatement defines a product
as defective in design where

"the foreseeable risks of harm posed by the product could have been reduced or
avoided by the adoption of a reasonable alternative design by the seller or other
distributor, or a predecessor in the commercial chain of distribution, and the
omission of the alternative design renders the product not reasonably safe." Re-
statement (Third) of Torts § 2(b).

In adopting this rule, the authors of the Restatement noted:

"Assessment of a product design in most instances requires a comparison be-
tween an alternative design and the product design that caused the injury, un-
dertaken from the viewpoint of a reasonable person. That approach is also used
in administering the traditional reasonableness standard in negligence."

The authors also noted that

"the test is whether a reasonable alternative design would, at reasonable cost, have reduced the foreseeable risks of harm posed by the product, and, if so, whether the omission of the alternative design by the seller or a predecessor in the distributive chain rendered the product not reasonably safe." Restatement (Third) of Torts § 2, Comment d.

Kansas law has been clear in allowing evidence of the feasibility of an alternative design in the trial of a design defect. See *Betts*, 236 Kan. at 115; *Siruta*, 232 Kan. at 667. However, Kansas has consistently held that evidence of a reasonable alternative design may but is not required to be introduced in a design defect action. See *Jenkins*, 256 Kan. at 636. Kansas has not used the concept of reasonable alternative design to become the standard by which the questioned product is measured.

In *Betts*, we stated that while the final test is one of consumer expectations,

"[i]n a products liability case involving a claimed design defect, the parties at the trial may present evidence as to the degree of the likelihood of harm from an intended and reasonably foreseeable use of the product and the feasibility of a safer design. Likewise, evidence may be introduced as to the importance of the need or needs served by the product and its design, the technical and economic feasibility and practicability of serving those needs with a safer design, and the availability of other products, if any, to serve the same needs." 236 Kan. at 115-16.

The Third Restatement's requirement that a plaintiff produce a reasonable alternative design has been harshly criticized. See Vargo, *The Emperor's New Clothes: The American Law Institute Adorns a "New Cloth" for Section 402A Products Liability Design Defects—A Survey of the States Reveals a Different Weave*, 26 U. Mem. L. Rev. 493 (1996); Vandall, *State Judges Should Reject the Reasonable Alternative Design Standard of the Restatement (Third), Products Liability, Section 2(b)*, 8 Kan. J.L. & Pub. Pol'y 62 (1998); Westerbeke, *The Reasonable Alternative Design Requirement*, 8 Kan. J.L. & Pub. Pol'y 66 (1998). Vandall states that the reasonable alternative design requirement is not supported by public policy or economic analysis because the cost of processing a case will make it economically impossible to produce a reasonable

alternative design in a small products liability case. 8 Kan. J.L. & Pub. Pol'y at 63. Further, contrary to the view of the authors of the Third Restatement that the majority of states require a reasonable alternative design to establish a design defect, research by John F. Vargo indicates that very few states in fact have this requirement. See 26 U. Mem. L. Rev. at 550-553. Vargo, in his exhaustive review examines the Restatement (Third) of Torts' claim that "reasonable alternative design" is the majority rule in this country and concludes that, far from a majority rule, only three states require reasonable alternative design and five do so by statute. See Appendix IV and related textual support for author's conclusions, 26 U. Mem. L. Rev. at 951, 501-951.

Our own research also reflects that a majority of jurisdictions in this country do not require a reasonable alternative design in product liability actions. It is clear in Kansas that evidence of a reasonable alterative design may be presented but is not required. We adhere to this principle and believe that it represents the majority rule in this country. Moreover, we believe the focus in such actions must remain on the product which is the subject of the litigation. In *Garst v. General Motors Corporation*, 207 Kan. 2, 20, 484 P.2d 47 (1971), a case decided before our adoption of the Restatement (Second) of Torts § 402A, we noted that with regard to negligent design, it was "insufficient merely to assert that a different design would have alleviated or averted the plaintiff's injuries."

In rejecting Comment l, we agree that as the foreword to the Third Restatement makes clear, the new Restatement "goes beyond the law." Hazard, *Foreword* to Restatement (Third) of Torts, xv, xvi (1997). Rather than simply taking a photograph of the law of the field, the Third Restatement goes beyond this to create a framework for products liability. We have examined Comment l and find it wanting. The adoption of Comment l necessarily involves the adoption of the reasonable alternative design standard and an exclusive risk/utility analysis of that reasonable alternative design to determine whether the subject product is defective. This is contrary to the law in Kansas.

To summarize the law in Kansas, whether a design defect in a product exists is determined using the consumer expectations test.

A plaintiff must show that the product is both in a defective condition and dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics. See *Lester*, 230 Kan. at 649-654. *Betts*, 236 Kan. at 115-16. Evidence of a reasonable alternative design may be introduced but is not required. *Siruta*, 232 Kan. at 667-68; *Jenkins*, 256 Kan. at 636. The fact that a hazard is open and obvious or has been warned against are factors to be considered in analyzing whether a product is defective or unreasonably dangerous. The ultimate determination remains whether the product is defective and dangerous beyond a reasonable consumer's expectations.

Thus, in response to the second question posed by the 10th Circuit Court of Appeals, we answer that while Kansas does not follow the portion of Comment j of the Restatement (Second) of Torts § 402A, which provides that a product bearing an adequate warning is not in defective condition, we also do not adopt Comment l of the Restatement (Third) of Torts § 2, which provides that an adequate warning does not foreclose a finding that a product is defectively designed. While we hold that an adequate warning does not foreclose a finding that a product is defectively designed, this does not signify an adoption or approval of Comment l or the remainder of the Restatement (Third) of Torts.