David HERTELENDY, Plaintiff-Appellant,†

v.

AGWAY INSURANCE COMPANY, Defendant-Respondent,

BLUE CROSS & BLUE SHIELD OF KENTUCKY, INC.,
Defendant.

Court of Appeals

*No. 92–2852. Submitted on briefs May 3, 1993.—Decided May 25, 1993.*

(Also reported in 501 N.W.2d 903.)

†Petition to review denied.

330

For the plaintiff-appellant the cause was submitted on the briefs of *George Burnett* and *Donald L. Romundson* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

For the defendant-respondent the cause was submitted on the brief of *Thomas L. Schober* of *Schober & Ulatowski, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   David Hertelendy appeals a summary judgment dismissing his personal injury complaint against Agway Insurance Company. David contends that the trial court erred by concluding that his father, Clarence Hertelendy, owed David no duty at the time of the accident because David voluntarily confronted an open and obvious hazard. We conclude that the trial court erroneously concluded that Clarence owed David no duty. However, because the trial court correctly determined that David was more negligent than Clarence as a matter of law, we affirm the judgment.

The facts, as asserted by David, are as follows: In 1988, David, a forty-year-old dentist, was helping Clarence cut down a tree at Clarence's cottage. An electrical wire ran parallel to the road approximately twenty feet away from the tree. Clarence made cuts on both sides of the tree, and David pushed the tree from one side so that it would not fall on the power line. Before Clarence had cut all the way through the tree, it fell on the power line. Clarence then cut four feet off the bottom of the

tree, causing the tree to swing on the wire until it was perpendicular to the ground. David noticed that the part of the tree touching the wire was on fire. Because the tree was hollow, the inside was also on fire and fire shot from inside the tree to the ground. David took off his sweatshirt and beat the ground with it, attempting to put out the fire.

David then stopped a passerby in a vehicle, DNR warden Stephen Matula. The Hertelendys asked Matula for a rope or a shovel, and David asked Matula to call the fire department. When Matula saw the tree on the wire and the sparks and fire, he told the Hertelendys to stay away from the tree several times. Clarence ignored Matula's warnings and started tying the rope around the tree's base. Clarence started pulling on the rope and asked David to help him. When David started pulling on the rope, he noticed he "began to get electrocuted." Almost immediately, the wire broke and the tree fell to the ground. Clarence was killed and David was injured.

David filed a personal injury complaint against Clarence's insurance carrier, Agway Insurance Company. David alleged that Clarence negligently felled the tree and negligently attempted to remove it from the power line, causing David's injuries. Agway moved for summary judgment. Based on the undisputed facts concerning the sequence of the accident, the trial court concluded that Clarence owed no duty to guarantee David's safety because the arcing electricity and fires were an open and obvious danger, reasoning that:

> [I]n the case where [the open and obvious danger rule] is used, the facts are so slanted in one direction that the court recognizes that there is no way a

> verdict could be sustained . . . if the jury came down against that set of facts.
>
>     . . . .
>
> You're saying that the plaintiff's move was so foolish that any juror or every jury is going to say that the plaintiff was more negligent, was more than 51 percent negligent . . . .
>
>     . . . .
>
> It's my feeling in this case based on the information in the file to date that a jury would find that this was an open and obvious danger to both David Hertelendy and to his father. When you have a tree against a power line, I think in this day and age everybody should know that's a very dangerous situation. When that tree is then conducting electricity and there is arcing and fires are being started . . . it's very obvious that that's a dangerous situation.
>
>     . . . .
>
> So I am granting the motion for summary judgment, but not really on the sole issue of finding that the negligence is determined as a matter of law. It's a ruling that combines both the open and obvious danger doctrine and, looking at these facts, the finding that one of these very foolish individuals in the face of a danger of this sort didn't owe any particular duty to the other.

 When reviewing a grant of summary judgment, appellate courts independently apply the same methodology as the trial court. *Kloes v. Eau Claire Cavalier Baseball Ass'n*, 170 Wis. 2d 77, 83, 487 N.W.2d 77, 79–80 (Ct. App. 1992). That methodology has been set forth numerous times, and we need not repeat it here. *See Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980).

David argues that the trial court erred by concluding that Clarence owed no duty to David as a matter of law. We agree. Our supreme court has repeatedly held that all persons have a duty to conduct themselves in a manner that will not harm or endanger others. *See, e.g., A. E. Invest. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483, 214 N.W.2d 764, 766 (1974). In this case, Clarence had a duty to conduct his tree-felling in a manner that would not harm or endanger David. Our inquiry, however, does not end here.

David also contends that the court erred by concluding that his negligence exceeded Clarence's as a matter of law. He argues that the degree of the parties' negligence is a question of fact for the jury and not a question of law for the court. While the apportionment of negligence is ordinarily a jury question, where the plaintiff's negligence clearly exceeds the defendant's, courts may so hold as a matter of law. *Kloes*, 170 Wis. 2d at 86, 487 N.W.2d at 81. Before addressing David's arguments in more detail, we believe a discussion of the open and obvious danger rule is helpful.

In Wisconsin, the term "open and obvious danger" has assumed two separate and distinct meanings. Because these meanings have no relationship to one another, the use of that phrase has generated a great deal of confusion. In the case before us, it is impossible to identify which legal doctrine the trial court relied upon when it dismissed David's complaint. For purposes of our analysis, we must explore each of the distinct meanings that has been attached to this doctrine and separate them.

The common-law origin of the open and obvious danger doctrine flows from the recognition that land-

owners are immune from liability for injuries caused to invitees by conditions or activities that present dangers obvious to the invitees, because invitees are, in most circumstances, expected to protect themselves from obvious dangers. *See* RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965). The landowner's duty to keep the premises safe for invitees extends only to dangers that the landowner knows about and the invitee does not. *See* AM.JUR.2D *Negligence* § 1211 (1989). ACCORDINGLY, THIS DOCTRINE HAS STOOD FOR THE PROPOSITION THAT THE LAND-OWNER HAS NO DUTY TO PROTECT AN INVITEE FROM OPEN AND OBVIOUS DANGERS INHERENT IN THE LAND'S CONDITION AND IN CERTAIN ACTIVITIES UNDERTAKEN BY THE INVITEE. IN SOME JURISDICTIONS, INCLUDING JURISDICTIONS UTILIZING A COMPARATIVE NEGLIGENCE TORT SYSTEM, THIS APPLICATION OF THE OPEN AND OBVIOUS DANGER DOCTRINE MEANS THAT THE LANDOWNER'S CONDUCT IS NOT EXAMINED OR COMPARED TO THE INVITEE'S CONDUCT FOR THE PURPOSE OF APPORTIONING NEGLIGENCE.

Wisconsin recognized and appeared to adopt this doctrine in *Scheeler v. Bahr*, 41 Wis. 2d 473, 164 N.W.2d 310 (1969). In *Scheeler*, a guest sued the land owner for injuries he sustained when he dove into a lake of an unknown depth. The court determined that the land owner had no duty to the plaintiff because diving into water of unknown depth presents an obvious hazard. The court held that "the defendant [landowner] is relieved of that duty [to warn invitees of a hazard] if the hazard is obvious or where it is reasonable to assume that it will be understood and appreciated." *Id.* at 480, 164 N.W.2d at 313.

Wisconsin courts have continued to use the open and obvious danger doctrine to absolve landowners of the duty to warn invitees of the hazard associated with diving into shallow water or water of unknown depth.

*See, e.g., Davenport v. Gillmore,* 146 Wis. 2d 498, 508, 431 N.W.2d 701, 706 (Ct. App. 1988); *Colip v. Travelers Ins. Co.,* 141 Wis. 2d 363, 367, 415 N.W.2d 525, 527 (Ct. App. 1987). In each of these cases, the court concluded that the plaintiff voluntarily confronted a danger so open and obvious that the defendant had no duty to warn or otherwise protect the plaintiff.

This doctrine was recently reaffirmed in *Griebler v. Doughboy Recreational, Inc.,* 160 Wis. 2d 547, 466 N.W.2d 897 (1991). Our supreme court affirmed a summary judgment dismissing the plaintiff's personal injury claim against an above-ground pool manufacturer who failed to warn of the dangers of diving into the pool, citing *Scheeler* and *Davenport* with approval. Thus, the court applied the open and obvious danger doctrine to preclude the plaintiff's recovery because the pool manufacturer had no duty to warn or otherwise protect the plaintiff from hazards associated with diving into the pool.

This meaning of the open and obvious doctrine—that the defendant owes no duty to the plaintiff—is not of unlimited application. It arose in common-law in very limited situations involving a landowner's duty to invitees or other special legal relationships. As our supreme court said in *A. E. Invest. Corp.,* 62 Wis. 2d at 486, 214 N.W.2d at 767–68:

> [*Davenport,* et al.], since they are concerned with special types of legal relationships, are out of the mainstream of negligence law in Wisconsin. . . . [The cases discussed] although fully consonant with the present law in their narrow field, are inappropriate in describing the general duty that an alleged tortfeasor has in the ordinary negligence case.

In fact, Wisconsin courts have repeatedly refused to apply the open and obvious danger doctrine to absolve defendants of any duty to warn plaintiffs of hazards where the landowner-invitee or manufacturer-consumer relationship was absent. In *Erickson v. Prudential Property and Cas. Ins. Co.*, 166 Wis. 2d 82, 90–91, 479 N.W.2d 552, 555 (Ct. App. 1991), we refused to apply the open and obvious danger rule to preclude recovery to a plaintiff who borrowed a chainsaw to limb a tree and was not warned of the danger of the tree limb springpoling and pinning him to the tree. Similarly, in *Ceplina v. South Milwaukee School Bd.*, 73 Wis. 2d 338, 342, 243 N.W.2d 183, 185–86 (1976), and *Kloes*, 170 Wis. 2d at 86, 487 N.W.2d at 81, the courts refused to apply the open and obvious danger doctrine to preclude recovery to plaintiffs participating in baseball games, who voluntarily exposed themselves to getting hit by a swinging bat or a batted ball. Thus, the determination that a party has no duty to the other is a narrow exception to the broader Wisconsin rule that all persons have the duty to conduct themselves in a manner that will not harm or endanger others. *A. E. Invest. Corp.*, 62 Wis. 2d at 483, 214 N.W.2d at 766.

Some states that have adopted comparative negligence statutes have addressed the issue of the proper application of the open and obvious danger doctrine to ordinary negligence cases and have essentially abolished its use to preclude recovery based on a lack of duty. *See Northern Indiana Public Serv. Co. v. Stokes*, 493 N.E.2d 175, 177 (Ind. App. 1986); *Harrison v. Taylor*, 768 P.2d 1321, 1324–25 (Idaho 1989). These cases conclude that the application of the doctrine to preclude recovery because the defendant owes no duty to a plaintiff who confronts an open and obvious danger is merely a corollary to the assumption of risk doctrine,

which is abolished in most comparative negligence states. These states therefore do not absolve the defendant of any duty but engage in a comparison of the parties' conduct and simply treat the open and obvious nature of the danger as a component of the plaintiff's negligence. *Harrison*, 768 P.2d at 1324–25, terms this approach as imposing a duty on the plaintiff to exercise ordinary care "under the circumstances." While this approach seems to correctly analyze the open and obvious danger doctrine within the strictures of comparative negligence, it has not found the approval of our supreme court.

Wisconsin courts, however, have addressed the issue of the proper application of the open and obvious danger doctrine within the context of comparative negligence principles, and concluded that its proper application amounts to a determination that the plaintiff's negligence in confronting an open and obvious danger exceeds the defendant's negligence as a matter of law. In *Kloes*, 170 Wis. 2d at 86–87, 487 N.W.2d at 81, we stated:

> Wisconsin's "open and obvious danger rule" is not to be confused with the assumption of risk theory as used in other states. Wisconsin abolished assumption of risk as a defense in negligence actions. Rather, in Wisconsin, where a plaintiff voluntarily confronts an open and obvious danger, his negligence, as a matter of law, exceeds any negligence attributable to the defendant(s). The open and obvious danger rule is not an absolute defense. Rather, it is a weighing of negligence as a matter of law. Its application bars the plaintiff's recovery under the contributory negligence statute . . . . (Citations omitted.)

Similarly, in *Wisnicky v. Fox Hills Inn & Country Club, Inc.*, 163 Wis. 2d 1023, 1024, 473 N.W.2d 523, 524 (Ct. App. 1991), we concluded that the determination that a condition poses an open and obvious danger does not absolve the defendant landowner of a duty of ordinary care. Rather, the plaintiff's voluntary disregard of an open and obvious danger means that the plaintiff is more negligent than the defendant as a matter of law.

Because Wisconsin is a comparative negligence state, *see* sec. 895.045, Stats., we conclude that this application should be limited to cases where a strong public policy exists to justify such a direct abrogation of comparative negligence principles. It should not be used to resolve liability issues in ordinary negligence cases, even where the plaintiff engaged in conduct that would be clearly negligent or could reasonably be foreseen as subjecting a party to a high risk of injury. These issues should be resolved by comparing the parties' conduct and apportioning negligence between them and not by absolving the defendant of any duty to the plaintiff.

It is equally important not to confuse the use, in ordinary negligence cases, of "open and obvious danger" as a descriptor to characterize the nature of the danger the plaintiff confronted with its application in landowner-invitee cases. In ordinary negligence cases, the open and obvious danger doctrine involves nothing more than the determination, within the context of comparative negligence, that the plaintiff's negligence exceeds another's as a matter of law, precluding recovery.

The trial court apparently alluded to this aspect of the open and obvious danger doctrine when he found that David "was so foolish that any juror or every jury is going to say that [he] was more negligent [than Clarence], was more than 51% negligent . . . ." Although Clarence's negligence resulted in the tree falling on the power line and his subsequent negligence in trying to free the tree exacerbated the situation, we agree with the trial court that the arcing electricity and fires inside the tree and on the ground presented such an obvious danger that David's negligence in grabbing the rope and attempting to pull the tree off of the power line in the face of that danger exceeded Clarence's causal negligence as a matter of law.

*By the Court.*—Judgment affirmed.