STARK, P.J.
¶1 Jordan Nutt was severely injured when a car he was driving was struck by a locomotive operated by Union Pacific Railroad Company. Nutt and his parents, William Nutt and Rhonda Birk, (collectively, "Nutt") filed this lawsuit, asserting negligence claims against Union Pacific and two of its employees, Michael Searle and Angelo Aguirre (collectively, "Union Pacific").[1] The circuit court granted summary judgment in favor of Union Pacific, concluding: (1) federal law preempted Nutt's claims regarding inadequate warning devices and an improper stop sign at the crossing where the collision occurred; (2) there was no evidence that either the vegetation or the condition of the roadbed at the crossing was a proximate cause of the collision; and (3) the undisputed facts established, as a matter of law, that Nutt's negligence exceeded any negligence by Union Pacific. Nutt now appeals, arguing the court erred by granting Union Pacific summary judgment and by denying Nutt's motion to compel discovery. We reject Nutt's arguments and affirm.
BACKGROUND
¶2 The collision at issue in this case occurred on June 1, 2012, at United States Department of Transportation Crossing No. 183867X ("the Crossing"), an at-grade, east-west railroad crossing that intersects 220th Street, a north-south road located in Baldwin, Wisconsin. It is undisputed that Union Pacific owns the Crossing and is responsible for maintaining it. On the date of the collision, each side of the Crossing was marked with both a stop sign and a retroreflective crossbuck sign-that is, a white "X" with the words "railroad crossing" written in black letters.
¶3 Nutt was seventeen years old on the date of the collision and had only been a licensed driver for about two months. At about 7:16 p.m. on that day, he approached the Crossing while driving north on 220th Street. At the same time, a westbound Union Pacific locomotive operated by engineer Bradley Gross was approaching the Crossing from the east. Nutt has no memory of the accident. However, video footage from the locomotive shows that Nutt did not stop at the Crossing or yield the right-of-way to Union Pacific's train. Instead, his vehicle decelerated and proceeded slowly onto the railroad tracks,[2] where it was struck by the locomotive.
¶4 Gross and Searle both averred that Gross sounded the locomotive's horn as the train approached the Crossing. All three crew members averred that they saw Nutt's vehicle approaching the Crossing, and that it failed to stop and yield the right-of-way to the locomotive and instead drove onto the railroad tracks. Gross and Searle also averred that Gross applied the locomotive's emergency brake once he saw that Nutt's vehicle had failed to yield the right-of-way.
¶5 The locomotive was equipped with an event data recorder (EDR), which is akin to an airplane's "black box" and records various locomotive functions, such as speed, braking, and horn usage. The EDR confirms that Gross began sounding the locomotive's horn thirty-eight seconds (or 2578 feet) before the train entered the Crossing. The train was traveling at forty-eight miles per hour when it entered the Crossing-just below the applicable speed limit of fifty miles per hour. The EDR further confirmed that Gross applied the locomotive's emergency brake one second (or seventy feet) before entering the Crossing. Mark Pollan-Union Pacific's former "Manager-Track Image Recorder/Event Recorder Center"-averred, based on his review of the EDR data, that the locomotive's crew complied with Union Pacific's timetable, track orders, and track bulletins, as well as the applicable federal regulations governing horn usage and speed limits.
¶6 Nutt filed the instant lawsuit against Union Pacific in May 2015 and ultimately filed a second amended complaint in March 2016. As relevant to this appeal, Nutt alleged that Union Pacific was negligent in operating the locomotive, in failing to install adequate warning devices at the Crossing, in placing an "illegal" stop sign at the Crossing, and in maintaining the vegetation and roadbed at the Crossing.
¶7 Union Pacific moved for summary judgment. Nearly two months later, Nutt moved to compel discovery and sought an extension of time to respond to Union Pacific's summary judgment motion until the requested discovery was completed. Among other things, Nutt sought to depose Union Pacific's corporate designees and obtain documents related to: (1) the installation of the stop sign at the Crossing; and (2) the effectiveness of flashing lights and automatic gates at railroad crossings generally. The circuit court granted Nutt an extension of time to respond to Union Pacific's summary judgment motion, but it denied Nutt's motion to compel the depositions of Union Pacific's corporate designees and the production of associated documents. The court concluded Nutt's claims "regarding the effectiveness of flashing lights and automatic gates and Wisconsin stop and yield signs" were preempted by federal law, and discovery regarding those issues would therefore be irrelevant.
¶8 The parties then completed their summary judgment briefing, and the circuit court ultimately issued an order granting Union Pacific summary judgment and dismissing Nutt's claims in their entirety. Nutt now appeals, challenging both the court's summary judgment ruling and its denial of his motion to compel discovery.
STANDARDS OF REVIEW
¶9 We independently review a grant of summary judgment, using the same methodology as the circuit court. Central Corp. v. Research Prods. Corp. , 2004 WI 76, ¶18, 272 Wis. 2d 561, 681 N.W.2d 178. Summary judgment is appropriate where there is no genuine issue as to any material fact and the undisputed facts establish that the moving party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[3] A factual issue is "genuine," for purposes of summary judgment, if a reasonable jury could find for the nonmoving party. Central Corp. , 272 Wis. 2d 561, ¶19. A fact is "material" when it "would influence the outcome of the controversy." Id.
¶10 We review the circuit court's denial of Nutt's motion to compel discovery for an erroneous exercise of discretion. See Lane v. Sharp Packaging Sys., Inc. , 2002 WI 28, ¶19, 251 Wis. 2d 68, 640 N.W.2d 788. We will sustain the court's decision as long as it examined the relevant facts, applied a proper standard of law, and used a rational process to reach a reasonable conclusion. Id. The burden is on Nutt to show that the court erroneously exercised its discretion, and we will not reverse unless an erroneous exercise of discretion is clearly shown. See id.
DISCUSSION
I. Inadequate warning device claim
¶11 As noted above, one of the claims asserted in Nutt's second amended complaint was that Union Pacific was negligent by failing to install adequate warning devices at the Crossing. Specifically, Nutt asserted that Union Pacific should have installed flashing lights and gates at the Crossing, instead of simply relying on crossbucks. The circuit court concluded the undisputed facts established that Nutt's claim regarding the adequacy of the warning devices at the Crossing was preempted by the Federal Railroad Safety Act (FRSA). We agree with the court's analysis.
¶12 The FRSA was created "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. It grants the United States Secretary of Transportation authority to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103(a). To promote uniformity, the FRSA expressly preempts state law in areas covered by the FRSA. See 49 U.S.C. § 20106(a) ; Partenfelder v. Rohde , 2014 WI 80, ¶27, 356 Wis. 2d 492, 850 N.W.2d 896. Its preemptive effect applies to both statutory and common law claims brought under state law. Partenfelder , 356 Wis. 2d 492, ¶28.
¶13 In Norfolk Southern Railway Co. v. Shanklin , 529 U.S. 344 (2000), the United States Supreme Court addressed whether the FRSA and two regulations promulgated under it- 23 C.F.R. §§ 646.214(b)(3) and (4) -preempt "state tort claims concerning a railroad's failure to maintain adequate warning devices at crossings where federal funds have participated in the installation of the devices." Shanklin , 529 U.S. at 351. The Court held that a plaintiff's claim regarding inadequate warning devices is preempted if: (1) federal funds were used to pay for the warning devices at the relevant crossing; and (2) the devices were actually installed and operating at the time of the accident. Id. at 354. The Court explained that "[w]hether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates or flashing lights would be appropriate, is immaterial to the pre-emption question." Id. at 358.
¶14 In this case, it is undisputed that the crossbucks at the Crossing were actually installed and operating at the time of Nutt's accident. See id. at 354. The sole issue, for purposes of the preemption inquiry, is whether federal funds were used to pay for the crossbucks. See id. Federal preemption is an affirmative defense on which the defendant bears the burden of proof. See Fifth Third Bank ex rel. Tr. Officer v. CSX Corp. , 415 F.3d 741, 745 (7th Cir. 2005). Nutt therefore argues that, to prevail on its summary judgment motion, Union Pacific was required to "conclusively establish[ ]" that federal funds were used to pay for the crossbucks. See Union Pac. R.R. Co. v. Cezar , 293 S.W.3d 800, 812 (Tex. App. 2009). Nutt further argues Union Pacific's summary judgment materials were insufficient to make this showing.
¶15 We disagree. In support of its summary judgment motion, Union Pacific submitted an affidavit of one of its attorneys, attached to which were two orders issued by the Wisconsin Office of the Commissioner of Railroads ("OCR"). In the first order, dated April 14, 1999, the OCR stated it was exercising its jurisdiction under WIS. STAT. § 195.28 to "determine the adequacy of warning devices at public crossings of railroad tracks in the state of Wisconsin." The OCR made a finding of fact that, "in order to adequately protect and promote public safety at the passive crossings of the tracks of [Union Pacific] in the State of Wisconsin, it is necessary to install and maintain retroreflective crossbucks." As such, the OCR "propose[d] to upgrade the crossbucks at all crossings in Wisconsin that have only passive warning devices"-i.e., signs, rather than flashing lights. The OCR stated it had "obtained approximately $ 850,000 in public funding for this project from the Federal Highway Administration (FHWA) and the Wisconsin Department of Transportation (DOT)." The OCR issued an amended order on July 26, 1999, which required Union Pacific to "install and maintain new retroreflective crossbucks" at its public crossings within six months after receiving the necessary materials.
¶16 Union Pacific also relied on an affidavit of Patricia Atkinson in support of its summary judgment motion. Atkinson averred that she was "the Federal Aid Accountant" for the DOT and that her responsibilities included "accounting for the receipt and disbursement of federal funds received by [the DOT] from the [FHWA] for use in railroad-related projects." Attached to Atkinson's affidavit were several exhibits, which she averred were "made at or near the time of the occurrence of the matters set forth by, or from information transmitted to or from, the [DOT], and [were] kept by the [DOT] in the course of regularly conducted activity as a regular practice."
¶17 Exhibit 1 to Atkinson's affidavit was a copy of an agreement between Union Pacific and the DOT "for the statewide Reflectorized Crossbuck Replacement Project, Project No. 0679-00-03, Federal No. STP 1998(684) (the 'Project')." The agreement provided that the DOT would furnish all necessary sign components and hardware for the Project, and Union Pacific would be responsible for installing the new signs. Exhibit 3 to Atkinson's affidavit was a "Final Cost Statement" showing that the total cost for the Project was $ 108,799.20, and that the DOT had received federal funds in that amount. Exhibit 4 to Atkinson's affidavit was a copy "of the Crossbuck Inventory for the Eau Claire Subdivision," which listed the Crossing as one of those that was to receive new crossbucks as part of the Project. Based on these documents, Atkinson averred that "federal funds were used to upgrade the crossbucks at the Crossing." We agree with Union Pacific that, taken together, this evidence conclusively establishes that federal funds were used to install the retroreflective crossbucks at the Crossing.
¶18 Nutt argues Atkinson's affidavit was insufficient to support Union Pacific's summary judgment motion because it failed to establish that Atkinson had personal knowledge of the matters stated therein, as required by WIS. STAT. § 802.08(3). Granted, Atkinson's affidavit does not expressly state that it was made on personal knowledge. However, an affidavit "need not contain an explicit recital of personal knowledge when it can be reasonably inferred from its contents that the material parts thereof are within the affiant's personal knowledge." 2A C.J.S. Affidavits § 47. Stated differently, "while an affidavit certainly can explicitly state that it is based on 'personal knowledge,' there is no requirement for a set of magic words." DIRECTV, Inc. v. Budden , 420 F.3d 521, 530 (5th Cir. 2005) (footnote omitted). Here, the substance of Atkinson's affidavit makes it clear that her averments were made with the requisite personal knowledge, and her failure to expressly state as much is therefore immaterial.[4]
¶19 Nutt next contends that Union Pacific's summary judgment materials merely demonstrate that federal funds may have been used to provide retroreflective crossbucks for some crossings in Wisconsin, but there is "no indication that [the Crossing] was included in that project." This argument, however, disregards Exhibit 4 to Atkinson's affidavit, which listed the Crossing as one of those that was to receive new crossbucks as part of the Project. It also disregards Atkinson's express averment that "federal funds were used to upgrade the crossbucks at the Crossing." Moreover, the OCR's original order expressly stated that the Project would "upgrade the warning devices at all of [the 2700] passive crossings" in Wisconsin. It is undisputed that the Crossing was a "passive crossing," as that term was used in the OCR's order, because it did not have automatic flashing lights.[5]
¶20 Finally, Nutt notes that the numbers of crossbucks and signposts referenced in the OCR's orders do not match the numbers listed in Exhibit 4 to Atkinson's affidavit. However, this discrepancy is easily explained, as the OCR's orders set forth the numbers of crossbucks and signposts required for the entire state, while Exhibit 4 listed only the materials required for the Eau Claire Subdivision. The discrepancy regarding the numbers of crossbucks and signposts in these exhibits therefore provides no basis for us to conclude Union Pacific's evidence was insufficient to establish that federal funds were used to pay for the retroreflective crossbucks at the Crossing. To the contrary, for the reasons explained above, Union Pacific's evidence conclusively established that federal funds were used to pay for the crossbucks. As such, the circuit court properly concluded that Nutt's inadequate warning device claim was preempted by the FRSA.
¶21 Furthermore, because Nutt's inadequate warning device claim was preempted, the circuit court properly exercised its discretion by denying that portion of Nutt's motion to compel discovery that sought information from Union Pacific about the effectiveness of flashing lights and automatic gates. The court reasonably concluded that, in light of its preemption ruling, the information Nutt sought was irrelevant. Cf. WIS. STAT. § 804.01(2)(a) (stating a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense"). In other words, the court reasonably concluded that, because Nutt's inadequate warning device claim was preempted, evidence regarding the effectiveness of other warning devices that Union Pacific could have installed had no tendency to make the existence of any fact that was of consequence to the action more probable or less probable than it would be without the evidence. See WIS. STAT. § 904.01. We agree with the court's analysis, and we therefore affirm both its summary judgment ruling regarding the inadequate warning device claim and its denial of Nutt's motion to compel discovery regarding that claim.
II. "Illegal" stop sign claim
¶22 Nutt's second amended complaint also asserted that Union Pacific was negligent by placing an "illegal" stop sign on the same post as the crossbuck at the Crossing. Nutt relies on the expert opinion of forensic engineer Brad Mathison, who averred:
[I]f there were no stop signs and Jordan Nutt would not have come to a rolling stop ... and [would have] proceeded across [the Crossing] at the rate of speed that a reasonably prudent motorist would traverse the [C]rossing, Jordan Nutt's vehicle would have clear[ed] the [C]rossing prior to the train's arrival, thereby avoiding the collision.
¶23 The circuit court concluded Nutt's illegal stop sign claim was preempted by the FRSA. On appeal, Nutt argues the court erred because there was no evidence the stop sign was paid for using federal funds. Union Pacific, in turn, does not develop any argument that the FRSA preempts Nutt's illegal stop sign claim. Instead, Union Pacific argues the illegal stop sign claim was properly dismissed because there is no evidence that Union Pacific installed the stop sign.
¶24 We agree with Union Pacific's analysis. See International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co. , 2007 WI App 187, ¶23, 304 Wis. 2d 732, 738 N.W.2d 159 (court of appeals may affirm a summary judgment on different grounds than those relied on by the circuit court). While Nutt repeatedly asserts that Union Pacific "unilaterally" installed the stop sign at the Crossing, the appellate record contains no evidence supporting that assertion. Nutt relies on railroad safety expert William Hughes' averment that unspecified records showed Union Pacific "participated in the installation" of the stop sign sometime around 2001. However, no such records are attached to Hughes' affidavit, nor does Nutt cite any other portion of the appellate record supporting Hughes' conclusory assertion that Union Pacific participated in the installation of the stop sign.
¶25 Moreover, as Union Pacific points out, the only evidence in the record about who may have installed the stop sign is a June 18, 2012 photograph showing a sticker affixed to the bottom of the sign, which reads:
WARNING
$ 25 to $ 100 fine or imprisonment for removing or tampering with this sign.
TOWN OF BALDWIN
This sticker supports a reasonable inference that the Town of Baldwin, not Union Pacific, installed the stop sign.
¶26 Alternatively, Nutt argues that, even if the present record does not contain any evidence showing that Union Pacific installed the stop sign, the circuit court erroneously exercised its discretion by denying his motion to compel discovery from Union Pacific on that issue. We reject this argument for two reasons.
¶27 First, while Nutt relies on Mathison's opinion that the collision would not have occurred absent the stop sign, Mathison acknowledged that Nutt did not actually come to a full stop at the Crossing, as required by the sign; he merely came to a "rolling stop." Mathison did not offer any opinion that the collision would have occurred even if Nutt had fully stopped at the stop sign. He simply averred that the collision would not have occurred if Nutt had proceeded through the Crossing at a normal rate of speed. Nutt cannot establish that the presence of the stop sign contributed to the collision when he did not, in fact, stop at the stop sign. Discovery regarding which entity installed the stop sign would therefore have been irrelevant.
¶28 Second, Nutt fails to acknowledge that, although the circuit court denied his motion to compel discovery from Union Pacific, he could have sought discovery regarding the stop sign's installation from other sources-for instance, the Town of Baldwin, the DOT, or the OCR. The fact that Nutt could have likely obtained the information he sought from other sources supports a conclusion that the court did not erroneously exercise its discretion by denying his motion to compel discovery from Union Pacific.
III. Vegetation and roadbed maintenance claims
¶29 The circuit court also dismissed on summary judgment Nutt's claims that Union Pacific was negligent in maintaining the vegetation and roadbed at the Crossing. The court concluded that, even if Union Pacific was negligent, there was no evidence that either the vegetation or the condition of the roadbed was a proximate cause of the accident. On appeal, Nutt argues genuine issues of material fact exist as to causation with respect to both his vegetation and roadbed maintenance claims.
¶30 Regarding his vegetation claim, Nutt asserts, based on the affidavit of railway engineering consultant Alan Blackwell, that Union Pacific's right-of-way at the Crossing extended for fifty feet on each side of the railroad tracks. Citing WIS. STAT. § 195.29(6), Nutt contends Union Pacific was required to keep its right-of-way clear of brush or trees for a distance of 330 feet in each direction along the length of the tracks, measured from the center of the Crossing. Blackwell opined that photographic evidence showed "vegetation on the Union Pacific right[-]of[-]way in violation of state law and Union Pacific's rules." Blackwell further opined it was "clear" that, on the day of the accident, "there was vegetation on ... Union Pacific's right[-]of[-]way within 330 feet down the tracks obstructing [Nutt's] view on the left and right side of this Crossing." Nutt contends this evidence is sufficient to establish a genuine issue of material fact as to whether the vegetation at the crossing was a proximate cause of the accident.
¶31 We disagree. The opinions set forth in Blackwell's affidavit are speculative, conclusory, and lack any factual basis in the record. For instance, while Blackwell averred that Union Pacific's right-of-way extends for fifty feet on each side of the railroad tracks at the Crossing, the document he cited in support of that assertion-an OCR engineering study-does not mention or define the dimensions of Union Pacific's right-of-way.
¶32 Blackwell's averment that the vegetation in the right-of-way violated state law and Union Pacific's internal rules is also flawed. As an initial matter, Blackwell's opinion in that regard is a legal conclusion, and, as such, the circuit court properly disregarded it. See Gross v. Woodman's Food Mkt., Inc. , 2002 WI App 295, ¶20 n.12, 259 Wis. 2d 181, 655 N.W.2d 718. Moreover, in support of his opinion, Blackwell relied on an exhibit, which he characterized as an "Aerial [Photograph] of Crossing and Right of Way." That exhibit was later substituted with a different image. However, both exhibits are merely poor-quality images taken from Google Earth, and neither one clearly identifies the depicted location as the Crossing.
¶33 Furthermore, even assuming that the images Blackwell relied on actually depict the Crossing, neither contains a legend or any other markings that would allow the viewer to determine which portion of the image corresponds to Union Pacific's right-of-way.[6] Additionally, the original exhibit lists an "imagery date" of June 27, 2010-just under two years before Nutt's accident-and the substituted exhibit provides an "imagery date" of September 26, 2012-nearly four months after Nutt's accident. Nutt has not presented any evidence supporting a conclusion that either of these exhibits accurately depicts the state of the vegetation at the Crossing at the time his accident occurred. See Merriman v. Cash-Way, Inc. , 35 Wis. 2d 112, 118, 150 N.W.2d 472 (1967) (photographs of the place of an accident are inadmissible when taken at a time remote from the accident date, unless a foundation is laid showing that the photographs were a correct representation of the conditions existing at the time of the accident). For all of these reasons, both the original exhibit and the substituted exhibit fail to support Blackwell's conclusory assertion that the vegetation at the Crossing violated state law and Union Pacific's internal rules.
¶34 Similarly, there is no evidence to support Blackwell's conclusory and speculative assertion that the vegetation at the Crossing obstructed Nutt's view of the railroad tracks. It is undisputed that Nutt does not remember whether the vegetation at the Crossing obstructed his view on the day of the accident. Nutt's father, William Nutt, testified he had traversed the Crossing "[a] couple dozen" times before Nutt's accident and had never had any "problems or issues with visibility." Nutt asserts that two photographs-taken by a Union Pacific employee four days after the accident-show the "obstructing vegetation" to the east and west of the Crossing. However, these photographs are misleading and irrelevant. They were taken fifty feet south of the Crossing, but the crossbuck and stop sign were located only fifteen feet south of the Crossing. Thus, the photographs do not accurately depict one's view of the tracks when stopped at the stop sign.
¶35 On the whole, because the relevant averments in Blackwell's affidavit are conclusory, speculative, or unsupported by the evidence, they are insufficient to create a genuine issue of material fact as to whether the vegetation at the Crossing was a proximate cause of Nutt's accident. As such, the circuit court properly granted Union Pacific summary judgment on Nutt's vegetation claim.[7]
¶36 The circuit court also properly dismissed Nutt's claim that Union Pacific negligently maintained the roadbed at the Crossing. Blackwell averred that Union Pacific periodically conducts track maintenance projects at the Crossing, which require Union Pacific "to slightly raise the track each time a project is completed." Blackwell further averred that, "[b]ecause of this rise, Union Pacific lays new asphalt after each resurfacing project." Based on a photograph attached to his affidavit, Blackwell averred that by adding new layers of asphalt to the roadbed surrounding the Crossing, Union Pacific had "humped or elevated this crossing without permission from any local road authority." He averred it is "well known in the railroad industry that humped crossings divert a driver's attention and can contribute to a collision."
¶37 Nutt argues these averments are sufficient to create a genuine issue of material fact as to whether Union Pacific's maintenance of the roadbed surrounding the Crossing created a "hump," which proximately caused his accident. We disagree. First, there is no evidentiary support for Blackwell's assertions that Union Pacific "lays new asphalt" each time it performs a track maintenance project and that this practice has elevated the Crossing "without permission from any local road authority." Blackwell cited no testimony, documents, or other evidence in support of these conclusory averments. Second, the photograph Blackwell relied on does not reveal any significant "hump" at the Crossing, beyond that which was already present due to the area's natural topography. Third, although Blackwell averred-in conclusory fashion-that humped crossings can distract drivers and cause collisions, there is no testimony from Nutt or any other witness suggesting a causal connection in this case between the "hump" at the Crossing and Nutt's accident. For these reasons, we conclude the circuit court properly granted summary judgment to Union Pacific on Nutt's roadbed maintenance claim.
IV. Comparative negligence analysis
¶38 Nutt also contends the circuit court improperly concluded, as a matter of law, that Nutt was negligent and that his negligence exceeded Union Pacific's. He argues both of those determinations are factual questions that should have been resolved by a jury, rather than by the circuit court on summary judgment.
¶39 As an initial matter, we reject Nutt's argument that the circuit court erred by concluding he was negligent, as a matter of law. As Nutt correctly observes, this court has previously stated that summary judgment "is usually inappropriate to resolve negligence issues" because negligence "involves the reasonableness of a person's action or inaction," and that determination is not typically amenable to resolution as a matter of law. See State Bank of La Crosse v. Elsen , 128 Wis. 2d 508, 517, 383 N.W.2d 916 (Ct. App. 1986). However, the fact that summary judgment is "usually" inappropriate to decide negligence issues does not mean negligence questions can never be resolved on summary judgment. See Fortier v. Flambeau Plastics Co. , 164 Wis. 2d 639, 662 n.9, 476 N.W.2d 593 (Ct. App. 1991) (collecting cases in which negligence issues were resolved on summary judgment). As a general matter, summary judgment is appropriate "if all facts and reasonable inferences from the facts lead to only one conclusion." H & R Block E. Enters. v. Swenson , 2008 WI App 3, ¶34, 307 Wis. 2d 390, 745 N.W.2d 421.
¶40 Here, the only reasonable conclusion that can be drawn from the undisputed facts is that Nutt was negligent, as a matter of law. All three of the locomotive's crew members averred that, as the train approached the Crossing, Nutt's vehicle failed to stop and yield the right-of-way to the train and instead drove onto the railroad tracks. The video footage from the locomotive confirms that Nutt proceeded onto the railroad tracks, without stopping or yielding to the approaching train.
¶41 This evidence conclusively establishes that Nutt violated WIS. STAT. § 346.44(1)(b), which provides that the operator of a vehicle shall not drive on or across a railroad crossing "[w]hile any warning device signals to stop, except that if the operator of the vehicle after stopping and investigating finds that no railroad train or railroad track equipment is approaching the operator may proceed." The stop sign at the crossing signaled Nutt to stop, but the undisputed evidence shows that he did not do so. Instead, he drove onto the railroad tracks without stopping, directly into the path of an approaching train. The undisputed facts also establish that Nutt violated § 346.44(1)(c), which prohibits a vehicle operator from driving on or across a railroad crossing "[i]f any crossbuck sign ... is maintained at the crossing, while any railroad train or railroad track equipment occupies the crossing or approaches so closely to the crossing as to constitute a hazard of collision." It is undisputed that a crossbuck sign was present at the Crossing, and that Nutt nevertheless drove onto the tracks at a time when a train approached so closely as to pose a danger that a collision would occur.[8]
¶42 Moreover, regardless of any duties Nutt had under WIS. STAT. § 346.44, Wisconsin courts have long held that a driver who proceeds onto railroad tracks without first ascertaining whether a train is approaching is "guilty of failure to exercise care in any degree," and a driver's failure to stop at a crossing, despite the presence of a stop sign, demonstrates a "complete indifference to the peril." Ligman v. Bitker , 270 Wis. 556, 560, 72 N.W.2d 340 (1955). A driver has "an absolute duty to look and listen for an approaching train before attempting to cross the railroad track." Keegan v. Chicago, M., St. P. & P. Ry. Co. , 251 Wis. 7, 11, 27 N.W.2d 739 (1947). Here, Nutt proceeded onto the railroad tracks without stopping, despite the presence of a stop sign, and drove directly into the path of an approaching train. It is undisputed that the train began sounding its horn thirty-eight seconds before it entered the Crossing. On these facts, the only reasonable inference is that Nutt failed in his duty to look and listen for an approaching train. We therefore agree with the circuit court that Nutt was negligent, as a matter of law.[9]
¶43 Nutt also argues the circuit court erred by concluding, as a matter of law, that his negligence exceeded that of Union Pacific. Wisconsin is a comparative negligence state. See WIS. STAT. § 895.045(1). As such, a plaintiff's negligence does not bar his or her recovery unless the plaintiff was more negligent than the defendant. Id.
¶44 Nutt contends, in the first instance, that the allocation of negligence between a plaintiff and a defendant is a question of fact that must be decided by a jury.[10] He is incorrect. "While the apportionment of negligence is ordinarily a jury question, where the plaintiff's negligence clearly exceeds the defendant's, courts may so hold as a matter of law." Hertelendy v. Agway Ins. Co. , 177 Wis. 2d 329, 334, 501 N.W.2d 903 (Ct. App. 1993).[11] In fact, our supreme court has held that, "when it is apparent to the court that the plaintiff's negligence is, as a matter of law, greater than any negligence on defendant's part, it is the court's duty to so hold." Peters v. Menard, Inc. , 224 Wis. 2d 174, 193, 589 N.W.2d 395 (1999).
¶45 Here, the only reasonable conclusion, based upon the undisputed facts, is that Nutt's negligence was greater than that of the Union Pacific employees operating the train.[12] On one hand, uncontroverted evidence shows that Nutt drove onto the railroad tracks without stopping, despite the presence of a stop sign at the Crossing. Moreover, he did not yield to the approaching train, which began sounding its horn thirty-eight seconds before entering the Crossing. On the other hand, there is no evidence that the Union Pacific employees operating the train were negligent in any way. The record shows that they sounded the locomotive's horn as they approached the Crossing, that the locomotive was traveling below the applicable speed limit, and that its emergency brake was applied when the crew saw Nutt's vehicle drive onto the railroad tracks. On these facts, no reasonable jury could conclude Nutt's negligence was equal to or less than that of Union Pacific. Accordingly, the circuit court properly concluded Nutt was more negligent than Union Pacific, as a matter of law.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

Searle was working as a conductor on the locomotive that struck Nutt's vehicle, and Aguirre was working as a student conductor.

One of Nutt's expert witnesses, forensic engineer Brad Mathison, averred based on his analysis of the video footage that Nutt's vehicle "decelerated from 16 mph to 2.7 mph prior to entering the crossing."

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Nutt contends-without citation to the record-that he was "precluded" from taking Atkinson's deposition "to further establish that she has no personal knowledge of federal funding at [the Crossing]." He then directs this court to the section of his brief addressing the circuit court's denial of his motion to compel discovery. However, the court's order denying Nutt's motion merely prevented him from deposing Union Pacific's corporate designees and obtaining certain documents from them pertaining to the installation of the stop sign at the Crossing and the effectiveness of flashing lights and automatic gates. Nothing in the court's order prevented Nutt from deposing Atkinson, a DOT employee, regarding the use of federal funds at the Crossing.

Nutt's railroad safety expert, William Hughes, averred Union Pacific's summary judgment materials showed that "only non-standard posts and crossbuck signs were to be replaced with federally fund[ed] posts and crossbucks." Nutt contends there is no evidence the posts and crossbucks at the Crossing were non-standard. Hughes did not, however, cite any records or other evidence in support of his conclusory averment that only non-standard posts and crossbuck signs were to be upgraded as part of the Project. See Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp. , 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999) (conclusory assertions are insufficient to defeat a summary judgment motion). As noted above, the OCR's original order required Union Pacific to upgrade the warning devices at all of its passive crossings.

Union Pacific concedes that the substituted exhibit-Record Item #168-contains an "outlined box." However, Union Pacific correctly observes that it is "unclear who created the outlined box, what it purports to outline, or on what factual or foundational basis or for what purpose the outlined area was created." In addition, Union Pacific correctly notes that the box is "unsupported by any legend calibrating distances or measurements or other explanatory identifiers."

In a related argument, Nutt appears to contend that Union Pacific was negligent by failing to issue a fifteen-mile-per-hour "slow order" for the Crossing. He argues Union Pacific's internal rules required it to issue such an order "until the non-compliant vegetation was remediated." He further contends that, had a slow order been in place, his accident "likely would not have occurred" because the train would have been traveling at fifteen miles per hour instead of forty-eight miles per hour. This argument fails because it presupposes that the vegetation at the Crossing was "non-compliant." As explained above, Nutt has not cited any evidence supporting a conclusion that the vegetation violated either state law or Union Pacific's internal rules.

Following the accident, Nutt was issued a citation for "IMPROPER STOP/PROCEEDING AT RR CROSSING." However, the citation incorrectly listed the statute Nutt violated as Wis. Stat. § 346.45(2). That statute only applies to certain types of vehicles that are required to stop at all railroad crossings, see § 346.45(1), and it is undisputed that Nutt's vehicle was not one of the types listed in the statute.
In its summary judgment analysis, the circuit court concluded Nutt was negligent as a matter of law based on his violation of Wis. Stat. § 346.45(2). The court was incorrect because, as explained above, Nutt did not violate that statute. Nonetheless, the undisputed facts show that Nutt violated both Wis. Stat. § 346.44(1)(b) and (c), and we may affirm a circuit court's summary judgment ruling on different grounds. See International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co. , 2007 WI App 187, ¶23, 304 Wis. 2d 732, 738 N.W.2d 159.

In his reply brief, Nutt asserts the "vegetation and the severely inclined roadway obstructed [his] view of the crossing and thus an oncoming train." However, as discussed above, there is no evidence in the record that Nutt's view was obstructed by the vegetation at the Crossing or that the humped roadbed was a proximate cause of the collision. Moreover, it is undisputed that the train sounded its horn as it approached the Crossing, and there is no evidence that Nutt was unable to hear the horn.

Nutt cites two unpublished, per curiam opinions in support of his assertion that comparative negligence questions must be resolved by a jury, rather than by a court on summary judgment. Later in his brief-in-chief, Nutt cites a third unpublished, per curiam opinion in support of his comparative negligence argument. These citations are in violation of Wis. Stat. Rule 809.23(3)(a), which prohibits the citation of unpublished opinions, except in limited circumstances not applicable here.
Although an unpublished, authored court of appeals opinion released after July 1, 2009, may be cited for its persuasive value, a per curiam opinion is not an authored opinion for purposes of Wis. Stat. Rule 809.23. See Rule 809.23(3)(b). Moreover, two of the per curiam opinions Nutt cites far predate July 1, 2009. In addition, while a fourth unpublished opinion that Nutt cites is authored and was released after July 1, 2009, Nutt has failed to provide us with a copy of that opinion, as required by Rule 809.23(3)(c). We admonish Nutt's attorney that future violations of the rules of appellate procedure may result in sanctions. See Wis. Stat. Rule 809.83(2).

Nutt makes much of the Hertelendy court's statement that "this application should be limited to cases where a strong public policy exists to justify such a direct abrogation of comparative negligence principles." See Hertelendy v. Agway Ins. Co. , 177 Wis. 2d 329, 339, 501 N.W.2d 903 (Ct. App. 1993). However, Nutt fails to acknowledge that Hertelendy was decided based upon the application of the open and obvious danger doctrine, see id. at 339-40, which provides that, "where a plaintiff voluntarily confronts an open and obvious danger, his negligence, as a matter of law, exceeds any negligence attributable to the defendant(s)," see Kloes v. Eau Claire Cavalier Baseball Ass'n , 170 Wis. 2d 77, 86, 487 N.W.2d 77 (Ct. App. 1992).
In context, the term "this application" in the sentence quoted above clearly refers to the application of the open and obvious danger doctrine. We do not rely on the open and obvious danger doctrine in affirming the circuit court's grant of summary judgment. Instead, we simply conclude, based upon the undisputed facts, that no reasonable jury could conclude Nutt's negligence was less than or equal to Union Pacific's. The limiting language from Hertelendy that Nutt relies upon is therefore inapplicable here.

Because we have already concluded that the circuit court properly granted Union Pacific summary judgment on Nutt's claims regarding inadequate warning devices, the stop sign at the Crossing, vegetation, and roadbed maintenance, we do not consider the allegations underlying those claims in our comparative negligence analysis.